**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Lenk,<br><br>  Plaintiff,<br><br>v.<br><br>Monolithic Power Systems Incorporated,<br><br>  Defendant. | No. CV-23-02083-PHX-JJT<br><br>**ORDER** |

At issue is Defendant's Motion to Dismiss (Doc. 14), which seeks dismissal with prejudice of all fifteen claims contained in Plaintiff's Complaint (Doc. 1, Complaint). Plaintiff, who proceeds *pro se*, filed a responsive memorandum notated as an "Opposition" (Doc. 20), to which Defendant filed a Reply (Doc. 21). Plaintiff also filed a sur-response notated as a "Second Opposition" (Doc. 22), which Defendant moved to strike (Doc. 23). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons explained below, the Court grants Defendant's Motion to Dismiss in part and denies it in part.

**I.   Background**

This case is merely the latest entry in a long-running litigation saga that commenced in 2015 and shows no signs of abating anytime soon. Plaintiff worked for Defendant as a marketing director from 2012 until Plaintiff quit Defendant's employ in 2013. Two years after the termination of the parties' employment relationship, Plaintiff filed his first lawsuit

against Defendant. The initial lawsuit was followed by four additional lawsuits, each one initiated by Plaintiff against Defendant and each one resulting in judgment for Defendant. The parties refer to these lawsuits as *Lenk I–IV*, with the instant case being *Lenk V*. Rather than reinvent the wheel, the Court will rely on *Lenk IV*'s summary of the facts, proceedings, and disposition of the four preceding *Lenk* lawsuits.

> Lenk has alleged in all four lawsuits that he began working for MPS as a marketing director in 2012; MPS began harassing him, discriminating against him, and subjecting him to adverse employment actions in early 2013; and he was constructively discharged in March 2013. Lenk's first two lawsuits asserted claims based on MPS's alleged discrimination, harassment, and ultimate constructive discharge of him. In his third lawsuit, Lenk reasserted claims based on his alleged constructive discharge and related conduct, and he added new claims based on MPS's post-discharge litigation conduct in defending against *Lenk I* and *Lenk II*. In . . . his fourth lawsuit, Lenk once again asserts claims based on his alleged constructive discharge and MPS's post-discharge litigation conduct, and he adds new claims that of [sic] post-discharge "blacklisting" by MPS.
>
> In light of Lenk's insistence on reasserting claims previously dismissed by the Court, the doctrines of res judicata and collateral estoppel were central to this Court's prior dismissals of *Lenk II* and *Lenk III*, and are central to MPS's current motion to dismiss *Lenk IV*. To inform its discussion of those doctrines in this order, the Court summarizes the claims asserted in Lenk's prior and current actions.
>
> ***Lenk I*, Case No. 15-cv-01148-NC**
> In March 2015, Lenk filed suit against MPS ("*Lenk I*") in the United Stated District Court for the Northern District of California ("Northern District"). He asserted two federal claims for violation of the Fair Labor Standards Act ("FLSA") and the Americans with Disabilities Act ("ADA"), and nine state law claims for breach of contract, constructive discharge, and violations of the California Labor Code. Magistrate Judge Nathanael M. Cousins, to whom the case was assigned, dismissed all claims under Rule 12(b)(6). Judge Cousins determined that Lenk had not alleged that he engaged in protected activity under the FLSA and had not alleged a disability under the ADA. *See Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148-NC, 2015 WL 6152475, at *3–4 (N.D. Cal. Oct. 20, 2015). Judge Cousins also found that Lenk had failed to state a claim for breach of contract, constructive discharge, or violation of the California Labor Code. *See Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148 NC, 2016 WL 1258862, at *3 (N.D. Cal.

Mar. 31, 2016); *Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148-NC, 2015 WL 7429498, at *9 (N.D. Cal. Nov. 23, 2015). The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") dismissed Lenk's appeal as frivolous.

### *Lenk II*, Case No. 16-cv-02625-BLF

Lenk filed a second suit against MPS ("*Lenk II*") in the Northern District in May 2016, again alleging constructive discharge and related conduct. The second suit also named Lenk's former supervisor at MPS, Maurice Sciammas ("Sciammas"). The case initially was assigned to Judge Cousins, but it was reassigned to [Judge Beth Labson Freeman] after Lenk declined to consent to magistrate judge jurisdiction.

Lenk claimed that MPS and Sciammas had discriminated against him in violation of 42 U.S.C. § 1981, and that they had retaliated against him in violation of Title VII. This Court dismissed those claims without leave to amend as barred by the doctrine of res judicata. *See Lenk v. Monolithic Power Sys., Inc.*, No. 16-CV-02625-BLF, 2017 WL 1832198, at *5 (N.D. Cal. May 8, 2017). The Ninth Circuit affirmed, concluding that "[t]he district court properly dismissed Lenk's action on the basis of claim preclusion because the claims were raised or could have been raised in a prior action between the parties or those in privity with them, and the prior action resulted in a final judgment on the merits." *Lenk v. Monolithic Power Sys., Inc.*, 754 F. App'x 554, 556 (9th Cir. 2018).

### *Lenk III*, Case No. 19-cv-03791-BLF

In March 2018, Lenk filed his third suit against MPS ("*Lenk III*") in the United States District Court for the District of Arizona. He also sued Sciammas and Sacks, Ricketts & Case LLP, the law firm that represented MPS and Sciammas *Lenk I* and *Lenk II* [sic]. The Arizona district court transferred the case to the Northern District, where it ultimately was assigned to this Court. Lenk asserted federal claims under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, and a state law emotional distress claim. *See Lenk v. Monolithic Power Sys. Inc.*, No. 19-CV-03791-BLF, 2020 WL 619846, at *3 (N.D. Cal. Feb. 10, 2020). Those claims were based in part on the alleged constructive discharge that had been litigated in *Lenk I* and *Lenk II*, and in part on new allegations that MPS engaged in post-discharge retaliatory conduct by defending itself against *Lenk I* and *Lenk II*. *See id.* at *6.

This Court found that the doctrine of collateral estoppel precluded Lenk from asserting that he was wrongfully constructively discharged, as that issue actually was litigated in *Lenk I* and *Lenk II*. *See Lenk*, 2020 WL 619846, at

*7. With respect to the defendants' alleged post-discharge retaliation, the Court found that the conduct described by Lenk consisted of ordinary litigation conduct in defense of *Lenk I* and *Lenk II* and thus could not form the basis of a Title VII retaliation claim. *See id.* at *8. The Court also found that Lenk had not alleged that he is a member of a racial minority as required under § 1981; had not allege [sic] state action as required under § 1983; and had not alleged that he belongs to a protected class as required under § 1985(3). *See id.* at 9-10. Finally, the Court determined that Lenk's emotional distress claims based on post-discharge conduct were barred by California's litigation privilege, Cal. Civ. Code § 47(b), and did not allege sufficient facts. *See id.* at *10-11.

*Lenk IV* [], Case No. 20-cv-08094-BLF
Lenk filed [this] action against MPS in the Northern District on November 16, 2020. . . . He filed the operative [complaint] on March 8, 2021, asserting eleven claims: (1) retaliation under Title VII; (2) civil rights violation under 42 U.S.C. § 19811; (3) retaliation under California's Fair Employment and Housing Act ("FEHA"); (4) harassment under FEHA; (5) hostile work environment under FEHA; (6) blacklisting under California state law; (7) blacklisting under Washington state law; (8) blacklisting under Arizona state law; (9) violation of California's Unfair Competition Law ("UCL"); (10) intentional interference with prospective economic relations; and (11) unjust enrichment.

In support of these claims, Lenk once again alleges that MPS constructively discharged him and that MPS engaged in retaliatory and harassing behavior when it defended itself against Lenk's suits. Lenk also adds new allegations that MPS "blacklisted" Lenk after he left the company by transmitting negative job references to On Semiconductor.

*Lenk v. Monolithic Power Sys., Inc.* ("*Lenk IV*"), No. 20-CV-08094-BLF, 2021 WL 5233078, at *1–3 (N.D. Cal. Nov. 10, 2021); *see also Lenk v. Monolithic Power Sys. Inc.* ("*Lenk III*"), No. 19-CV-03791-BLF, 2020 WL 619846, at *1–3 (N.D. Cal. Feb. 10, 2020) (describing the facts, proceedings, and dispositions of *Lenk I–III*). The *Lenk IV* court dismissed all eleven of Lenk's claims with prejudice, finding that "all of Lenk's claims are subject to dismissal for failure to state a claim and that leave to amend is not warranted." *Id.* at *3.

. . .

After losing in *Lenk IV*, Plaintiff filed the instant lawsuit seeking relief for claims alleging (1) age discrimination in the form of disparate treatment under the Age Discrimination in Employment Act of 1967 ("ADEA"); (2) age discrimination in the form of disparate impact under ADEA; (3) age and race discrimination under the California Fair Employment and Housing Act; (4) age and race discrimination under the Arizona Civil Rights Act; (5) age and race discrimination under the Washington Law Against Discrimination; (6) retaliation under Washington law; (7) retaliation under the California labor code; (8) retaliation under Title VII; (9) race-related violations of the Civil Rights Act of 1866 and the Civil Rights Act of 1991; (10) retaliation under the California Fair Employment and Housing Act; (11) unfair competition under California law; (12) retaliation under the Sarbanes-Oxley Act; (13) blacklisting under California law; (14) blacklisting under Washington law; and (15) blacklisting under Arizona law. (Complaint at 48–89.)

In support of his fifteen claims, Plaintiff's 90-page Complaint recapitulates all of the facts that he has already presented to the courts in *Lenk I–IV*, focusing heavily on the constructive discharge, retaliation, harassment, and blacklisting that Plaintiff believes he has suffered and continues to suffer at the hands of Defendant. Although Plaintiff's Complaint consists mostly of a regurgitation of his prior, unsuccessful complaints in *Lenk I–IV*, the current Complaint also extends the factual narrative beyond the conclusion of *Lenk IV* and alleges a handful of new facts. Specifically, Plaintiff asserts that he has applied for several positions with Defendant, but that Defendant has rejected each of his employment applications for illegal, discriminatory, and retaliatory reasons. (Complaint at 30–33.) Plaintiff also alleges that Defendant has maliciously prevented him from procuring employment with various other companies in the years following *Lenk IV*. (Complaint at 34–38.)

Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is grounded primarily in the doctrines of claim preclusion and issue preclusion. Indeed, Defendant's current Motion to Dismiss echoes many of the preclusion arguments that

1  Defendant has already successfully asserted against Plaintiff in *Lenk I–IV*. Having read the
2  parties' briefing, including Plaintiff's sur-response, the Court proceeds to the merits of the
3  case.

## II. Discussion

### A. Legal Standard

Pursuant to FRCP 8(a)(2), a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A court may dismiss a complaint that fails to comply with Rule 8. *See Kraft v. Gainey Ranch Cmty. Ass'n*, No. CV-19-05697-PHX-JJT, 2021 WL 535527, at *1 (D. Ariz. Feb. 12, 2021), aff'd, No. 21-15653, 2022 WL 2315443 (9th Cir. June 28, 2022) ("Plaintiff subsequently filed a First Amended Complaint that was 105 pages, which the Court struck because it did not comply with Rule 8.").

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Id.* at 679–80.

. . .

1    In determining whether a claim is precluded by a prior adjudication, the Court must first determine which body of law governs the analysis. The preclusive effect of a prior ruling by a federal court sitting in diversity is determined by the preclusion rules of that court's forum state, whereas the preclusive effect of a federal-question adjudication is determined by a uniform federal standard. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173 (9th Cir. 2002). The rendering courts of *Lenk I–IV* were federal courts in the Northern District of California. Because *Lenk I–IV* involved federal courts whose jurisdiction depended in part upon the existence of federal questions and in part upon the existence of diversity, the Court would ordinarily bifurcate its analysis of the preclusive effect carried by the prior adjudications. However, the Court need not do so here because the distinction between the federal standards for issue preclusion and the California standards for issue preclusion is not significant, at least for purposes of this case.[1] *Compare In re Lopez*, 367 B.R. 99, 104 (B.A.P. 9th Cir. 2007), *with DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015).

Under both standards, a defendant asserting issue preclusion must show that the prior issue is identical to the current issue, that the issue was actually decided in the prior action, that the issue was necessary to the prior judgment, that such judgment was on the merits, and that the parties are the same. Furthermore, under both federal and California law, a dismissal for failure to state a claim is a dismissal on the merits. *See Save Bull Trout v. Williams*, 51 F.4th 1101, 1108 (9th Cir. 2022); *Boyd v. Freeman*, 18 Cal. App. 5th 847, 855 (2017) ("[I]t is generally held that a demurrer which is sustained for failure of the facts alleged to establish a cause of action, is a judgment on the merits. However, this is true only if the same facts are pleaded in the second action, or if, although different facts are

---

[1] While the federal rules of issue preclusion do not differ materially from those of California, at least as applied to this case, the same is not true for claim preclusion. *See Guerrero v. Dep't of Corr. & Rehab.*, 28 Cal. App. 5th 1091, 1099 (2018) ("The basic principles of claim preclusion are roughly the same under California and federal law, but there are some key differences. For example, while federal law defines a 'claim' for purposes of claim preclusion using a transactional test, California law uses the older pleading term 'cause of action' and defines it according to the common law doctrine of primary rights."). However, the Court does not reach claim preclusion in this Order.

pleaded, the new complaint contains the same defects as the former." (quoting *Kanarek v. Bugliosi*, 108 Cal. App. 3d 327, 334 (Ct. App. 1980)) (cleaned up)).

### B. Analysis

In *Lenk IV*, Plaintiff sued Defendant for, among other things, retaliation under Title VII, retaliation and harassment under the California Fair Employment and Housing Act, blacklisting under California law, blacklisting under Washington law, blacklisting under Arizona law, and unfair competition under California law. The court in *Lenk IV* held that Plaintiff had failed to state a claim on any cause of action. In issuing its holding, the court concluded that Plaintiff "offer[ed] only pure speculation that MPS transmitted negative references to On Semiconductor" and that Plaintiff's "subjective belief that MPS must have done so because he otherwise would have been selected for the positions does not satisfy his burden to plead *facts* giving rise to a plausible claim." *Lenk IV*, 2021 WL 5233078, at *5. Similarly, the court found that Plaintiff "[had] not alleged facts suggesting a causal connection between his 2012 suit against Freescale Semiconductor and MPS's alleged negative references in 2013 and 2019." *Id.* The court went on to reject Plaintiff's "asserti[on] that an inference of blacklisting may be drawn from the fact that an MPS employee 'pinged' Lenk's Linked-In account during a time period in which Lenk applied for a job that he did not get," and the court ultimately held that Plaintiff "fail[ed] to explain how the pinging of his Linked-In account relates to the alleged blacklisting." *Id.* at *8. The court reiterated that "Lenk has not alleged facts sufficient to make out a plausible claim that [Defendant] communicated with On Semiconductor, or that such communication has prevented Lenk from engaging in a useful occupation. Lenk's bare speculation that [Defendant] must have given him a negative reference because he was not hired is insufficient to state a claim [for blacklisting]." *Id.* at *9. The court also held that Lenk was precluded from reasserting his allegations of constructive discharge, race discrimination, and litigation-related retaliatory conduct. *Id.* at *4–6.

In the instant case, Plaintiff once again claims retaliation, blacklisting, harassment, and unfair competition, and he supports these claims with extensive references to

Defendant's alleged punitive actions regarding Plaintiff's filing of a complaint against Freescale Semiconductor (Complaint at 5–9), alleged constructive discharge of Plaintiff (Complaint at 11–18), alleged racial discrimination against Plaintiff while he was an employee (Complaint at 21 ¶ 90), alleged litigation-related retaliatory conduct arising out of *Lenk I–III* (Complaint at 22–24, 27), alleged transmission of malicious references to On Semiconductor (Complaint at 28–30), and alleged malicious use of Linked-In (Complaint at 29–30). The Court finds Plaintiff to be collaterally estopped under the doctrine of issue preclusion from reasserting the same facts that undergirded his unsuccessful lawsuits in *Lenk IV*. All of the elements of issue preclusion are met here. The same facts and issues that Plaintiff depends upon today were actually and necessarily determined in an adjudication on the merits between the same parties in *Lenk IV*.

This conclusion standing alone merits dismissal of the instant Complaint, as Plaintiff's various claims are thoroughly entangled with the issues that are subject to preclusion by virtue of *Lenk IV*. Throughout the Complaint, Plaintiff depicts Defendant's alleged wrongs as a continuous course of conduct, thereby making it impracticable for the Court to disaggregate the precluded issues upon which Plaintiff relies from those that might not be precluded. (*See, e.g.*, Complaint at 32 ¶ 161 ("Lenk asserts that [Defendant] has and continues to retaliate and discriminate against him as recently as the July 11, 2022 failure to hire, due to his age and/or race and/or due to his reporting of [Defendant's] of Federal and State laws . . . ."); Complaint at 33 ¶ 164 ("[Defendant] refuses to hire Lenk yet continue their retaliation against him by interfering with his career with other semiconductor companies noted below."); Complaint at 37 ¶ 186 ("Plaintiff alleges that [Defendant] has and continues to retaliate against him by their own failure to hire and by blacklisting him at other companies listed above. Lenk asserts [Defendant] retaliated/discriminated against him for standing up to their unethical and illegal behavior (and financial reporting, a violation of *Sarbanes-Oxley*) and other violations of state and federal laws."); Complaint at 39 ¶ 194 ("[Defendant] continued their harassment of Lenk, whenever possible."); Complaint at 41 ¶ 203 ("[Defendant] continues to make Lenk an

example to dissuade other employees from reporting ethic and other violations of law, such that the top employees can personally reap hundreds of millions of dollars via their stock options."); Complaint at 61 ¶ 317 ("Lenk further alleges that [Defendant] has and continues to harass, discriminate and retaliate against Lenk (for his filing of EEOC charges) to discourage him (and other [of Defendant's] employees) from asserting their rights under law."); Complaint at 64 ¶ 336 ("Since the filing of [the Freescale] complaint, Lenk suffered retaliation and constructive discharge by [Defendant] for doing so at that time, which continues today by [Defendant's] "*blacklisting*" activities.").)

Even in his summarized claims for relief at the end of his Complaint, Plaintiff repeatedly grounds his requests in factual allegations adjudicated time and again by prior courts, such as his 2013 reporting activities (Complaint at 59 ¶ 306), his 2012 lawsuit against Freescale (Complaint at 61 ¶ 316, 64 ¶ 336, 74 ¶ 383), his 2013 alleged constructive discharge (Complaint at 61 ¶ 317), the alleged racial discrimination that he suffered while employed with Defendant in 2013 (Complaint at 69 ¶ 359, 74 ¶ 381), and the alleged malicious interference with his employment opportunity at On Semiconductor and related malicious pinging of his Linked-In account (Complaint at 85 ¶ 444).

To be clear, Plaintiff does allege new facts that might provide sufficient independent support for his claims such that portions of the Complaint might withstand Defendant's Motion to Dismiss. For instance, Plaintiff alleges that he was not hired by Halo Semiconductor, SiTime, Infineon, Microchip, and Renesas and that the interviewers at each of those companies pursued a line of questioning that indicated they had conferred with Defendant beforehand. (Complaint at 34–38.) This fact is the first step toward a coherent claim of blacklisting or retaliation, but Plaintiff does not adequately connect the dots. It is common practice for a potential employer to seek information from an applicant's prior employers. Indeed, the statute that forms the basis of Plaintiff's fifteenth claim expressly protects such information-gathering activities from the ambit of its general blacklisting prohibition. *See* Ariz. Rev. Stat. § 23-1361(B) ("It is not unlawful for a former employer to provide to a requesting employer . . . information concerning a person's . . . job

performance to be used for the purpose of evaluation the person for employment."). Thus, Plaintiff's position that an inference of retaliatory blacklisting follows directly from the fact that potential employers conferred with Defendant verges quite close to the "bare speculation" that the court denounced in *Lenk IV* in connection with Plaintiff's prior claims for retaliation and blacklisting. *See* 2021 WL 5233078, at *8–9. As already noted, legal conclusions masquerading as factual allegations are not entitled to a presumption of truth when confronted with a motion to dismiss. *See Iqbal*, 556 U.S. at 679–80. However, the Court will indulge the assumption that Plaintiff failed to adequately allege his claims not because he has no claim to allege, but instead because he became caught up in portraying the narrative as a continuing course of conduct going back to 2012. Of course, that strategy was to Plaintiff's detriment, as the vast majority of Plaintiff's Complaint is precluded by *Lenk I–IV*.

Plaintiff's claims regarding Defendant's failure to hire him from 2021 onwards also might have merit,[2] but they too are insufficiently developed and excessively intertwined with the general invalidity of the Complaint. The Court would be on solid ground were it to dismiss Plaintiff's Complaint with prejudice, as Defendant urges. However, because the Court concludes that a few of Plaintiff's claims might have merit, and in light of Plaintiff's status as a *pro se* litigant, the Court will instead dismiss the Complaint without prejudice. The Court cannot say with certainty that Plaintiff has not buried a cognizable claim somewhere in his 90-page Complaint. The problem is that the Complaint is so long, so dense, and so internally interconnected that Plaintiff's pervasive reliance on precluded issues contaminates whatever legitimate allegations he might have. Therefore, the Court will afford Plaintiff leave to amend his Complaint.

However, the Court notes that the courts in both *Lenk III* and *Lenk IV* identified Plaintiff as a "bad faith" litigator. *See* 2020 WL 619846, at *12; 2021 WL 5233078, at *10.

---

[2] On the other hand, many of Plaintiff's allegations regarding Defendant's failure to hire him read as simple racism, such as when Plaintiff alleges that "[Defendant's] Asian company culture discriminates against non-Asian (Caucasian and other races) employees whose ancestry/characteristics support strong ethics . . . ." (Complaint at 65 ¶ 339.) If Plaintiff avails himself of the Court's permission to file an amended complaint, Plaintiff is required to couch his allegations in facts rather than in derogatory racial generalities.

- 11 -

Indeed, the court in *Lenk IV* declined to provide Plaintiff leave to amend due to its determination that Plaintiff was "acting in bad faith." *See* 2021 WL 5233078, at *10–11. Therefore, the Court warns Plaintiff that his amended complaint (1) must not allege any facts or claims predicated thereon already rejected in *Lenk I–IV* and (2) must comply with Rule 8(a). Although the Court will not pronounce a hard-and-fast page limit, the Court notes that 90 pages (plus 359 pages of attachments) is excessive for a complaint in a case as straightforward as this. Accordingly, the Court urges Plaintiff to ensure that his amended complaint comports with the requirement that pleadings in federal court be "short and plain." Failure to comply with this Order will result in dismissal of Plaintiff's amended pleading and the possible imposition of sanctions, including but not limited to an order to pay attorney fees and a formal declaration that Plaintiff is a vexatious litigant.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Motion to Dismiss. (Doc. 14.)

**IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint (Doc. 1) without prejudice. Plaintiff shall have **fourteen days** to file a First Amended Complaint.

**IT IS FURTHER ORDERED** denying as moot Defendant's Motion to Strike. (Doc. 23.)

Dated this 19th day of September, 2024.

*[signature]*

Honorable John J. Tuchi
United States District Judge