**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Kenneth Lenk,

        Plaintiff,

v.

Monolithic Power Systems Incorporated,

        Defendant.

No. CV-23-02083-PHX-SHD

**ORDER**

Pending before the Court are (1) Defendant Monolithic Power Systems Inc.'s ("Monolithic") motion to dismiss Plaintiff Kenneth Lenk's First Amended Complaint ("FAC"), (Doc. 31), and related request for judicial notice, (Doc. 32); (2) Lenk's motion for default against Monolithic, (Doc. 42); and (3) Lenk's motion for leave to amend the FAC, (Doc. 48).  For the reasons explained below, the Court **grants in part and denies in part** Monolithic's motion to dismiss and **grants** its request for judicial notice, **denies** Lenk's motion for default, and **denies** Lenk's motion for leave to amend the FAC to add a defendant.[1]

## I.    BACKGROUND

The parties are familiar with the factual background of this case, (*see generally* Doc. 25 at 1–5), so it is unnecessary to recount it in detail.  In short, as recognized previously, "[t]his case is merely the latest entry in a long-running litigation saga that commenced in 2015." (*Id.* at 1.)  *See Lenk v. Monolithic Power Sys. Inc.*, No. 15-cv-01148-NC, 2015 WL

---

[1]    The parties did not request oral argument, so the Court decides these motions without holding a hearing.  *See* LRCiv 7.2(f).

6152475 (N.D. Cal. 2015), 2015 WL 7429498 (N.D. Cal. 2015), 2016 WL 1258862 (N.D. Cal. 2016) ("*Lenk I*"); *Lenk v. Monolithic Power Sys. Inc.*, No. 16-cv-02625-BLF, 2017 WL 2491597 (N.D. Cal. 2017), 2017 WL 1832198 (N.D. Cal. 2017) ("*Lenk II*"); *Lenk v. Monolithic Power Sys. Inc.*, No. 19-cv-03791-BLF, 2020 WL 619846 (N.D. Cal. 2020) ("*Lenk III*"); *Lenk v. Monolithic Power Sys., Inc.*, No. 20-cv-08094-BLF, 2021 WL 5233078 (N.D. Cal. 2021) ("*Lenk IV*").  In his previous cases, Lenk generally alleged that Monolithic, his former employer, discriminated against him, harassed him, subjected him to adverse employment actions, constructively discharged him, and prevented him from obtaining other employment.  (*See* Doc. 25 at 2.)  The courts in *Lenk II–IV* ultimately dismissed those suits largely under the doctrines of claim and issue preclusion.  (*See id.* at 2–5.)

Lenk filed the instant case ("*Lenk V*") in October 2023.  (Doc. 1.)  His "90-page Complaint recapitulate[d] all of the facts that he [had] already presented to the courts in *Lenk I–IV*, focusing heavily on the constructive discharge, retaliation, harassment, and blacklisting that [Lenk] believes he has suffered and continues to suffer at the hands of [Monolithic]."  (Doc. 25 at 5.)  Monolithic's motion to dismiss the Complaint was granted because Lenk was "collaterally estopped under the doctrine of issue preclusion from reasserting the same facts that undergirded his unsuccessful lawsuits in *Lenk IV*."  (*Id.* at 9.)  This, "standing alone[,] merit[ed] dismissal," because Lenk's "various claims [were] thoroughly entangled with the issues that [were] subject to preclusion by virtue of *Lenk IV*," such that "the precluded issues upon which [Lenk] relie[d]" could not be disaggregated "from those that might not be precluded."  (*Id.*)

Lenk, however, had "allege[d] new facts that might provide sufficient independent support for his claims such that portions of the Complaint might withstand [Monolithic's] Motion to Dismiss."  (*Id.* at 10.)  These allegations included that "Halo Semiconductor, SiTime, Infineon, Microchip, and Renesas" did not hire him "and that the interviewers at each of those companies pursued a line of questioning that indicated they had conferred with [Monolithic] beforehand."  (*Id.*)  Lenk had not "adequately connect[ed] the dots,"

though." (*Id.* at 10–11.)

Nevertheless, the Court "indulge[d] the assumption that [Lenk] failed to adequately allege his claims not because he [had] no claim to allege, but instead because he became caught up in portraying the narrative as a continuing course of conduct going back to 2012." (*Id.* at 11.)  Thus, because a "few of [Lenk's] claims might have merit, and in light of [his] status as a *pro se* litigant," Lenk's Complaint was dismissed with leave to amend.  (*Id.*)  But because Lenk was warned that "his amended complaint (1) must not allege any facts or claims predicated thereon already rejected in *Lenk I–IV* and (2) must comply with Rule 8(a)." (*Id.* at 11–12.)  Lenk was informed that any failure to comply with the Order would "result in dismissal of [Lenk's] amended pleading and the possible imposition of sanctions, including but not limited to an order to pay attorney fees and a formal declaration that [Lenk] is a vexatious litigant." (*Id.* at 12.)

On October 3, 2024, Lenk filed the FAC.  (Doc. 26.)  The FAC asserted the same fifteen claims that were dismissed.  (*Compare* Doc. 25 at 5, *with* Doc. 26 at 13–28.)

On October 24, 2024, Monolithic filed the instant motion to dismiss the FAC.  (Doc. 31.)  In support, Monolithic filed a request for judicial notice.  (Doc. 32.)

On November 5, 2024, Lenk requested an extension of time to respond to Monolithic's motion, arguing that Monolithic did not comply with LRCiv 12.1(c), which requires the parties to meet and confer before filing a motion to dismiss.  (Doc. 34.)  Monolithic's motion was not struck, because although Monolithic did not comply with LRCiv 12.1(c), "striking [the] motion to dismiss would be an inapt remedy" because it was "clear from the record that a curative amendment is not possible in this particular case." (Doc. 35 at 1.)  Instead, Monolithic was required to meet and confer with Lenk "regarding the issues identified in its Motion to Dismiss and the possibility of a curative amendment relating to those issues" and file either a certificate of consultation (the "Certificate") in its reply brief or as a standalone notice.  (*Id.* at 2.)  On November 15, 2024, Monolithic filed the Certificate.  (Doc. 36.)

On November 14, 2024, Lenk filed his response to the motion to dismiss.  (Doc.

37.)  On November 22, 2024, Monolithic filed its reply.  (Doc. 38.)

On November 25, 2024, Lenk filed a response in opposition to the Certificate.  (Doc. 39.)  On December 2, 2024, Monolithic filed a reply in support of the Certificate.  (Doc. 40.)

On December 9, 2024, Lenk filed a motion for default against Monolithic, arguing that because Monolithic did not file the Certificate with its motion to dismiss, Monolithic's motion did not constitute a valid response to the FAC, and default was proper.  (Doc. 42 at 2–3.)  On December 13, 2024, Monolithic filed a response, (Doc. 43), and on December 20, 2024, Lenk filed a reply, (Doc. 44).

On February 24, 2024, Monolithic filed its disclosure statement identifying BlackRock, Inc., ("BlackRock") as owning 10% or more of Monolithic's stock.  (Doc. 47 at 2.)  Then, on April 24, 2024, Lenk moved for leave to amend the FAC to add BlackRock as a defendant.  (Doc. 48.)  This motion is now fully briefed.  (Doc. 49 (response); Doc. 50 (reply); Doc. 52 (sur-reply).)[2]

## II.    MOTION FOR DEFAULT

Lenk's motion for default will be considered first because he argues Monolithic's motion to dismiss cannot be considered and Monolithic must be defaulted for failing to respond to the FAC.  (Doc. 42 at 2–3.)  For the following reasons, Lenk's motion is denied.

### A.    Legal Standard

Under Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  This Court's Local Rules provide that "[n]o motion to dismiss for failure to state a claim . . . will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion" through personal consultation and the "parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party."  LRCiv

---

[2]    On June 13, 2025, Lenk also filed a "sur-sur-reply" without authorization from the Court.  (Doc. 53.)

12.1(c).  Any motion that "does not contain the required certification may be stricken summarily."  *Id.*

### B.    Discussion

It is undisputed that Monolithic did not comply with LRCiv 12.1(c).  (*See* Doc. 35 at 1.)  This rule required Monolithic to meet and confer with Lenk before filing its motion to dismiss, yet it did not do so.  (*See* Doc. 36 at 1.)  Accordingly, Monolithic's motion could be struck for failure to comply.  *See* LRCiv 12.1(c).  But the Court already declined to do so.  (Doc. 35.)

That said, it is not clear that Monolithic complied with the previous Order requiring it to meet and confer with Lenk on the issues in the motion to dismiss.  (*Id.* at 2.)  Monolithic proffered its November 5, 2024, email exchange with Lenk that pre-dated the previous Order, (Doc. 36), but the Order required a *new* meet-and-confer between the parties.  (Doc. 35 at 2.)

Striking Monolithic's motion is not warranted, however.  Although LRCiv 12.1(c) is mandatory as the previous Order noted, (Doc. 35 at 1), in this instance only, Monolithic's noncompliance is excused, given the unique circumstances of this case.  *See* LRCiv 83.6 ("[A]ny Judge of this Court may suspend any of these Local Rules for good cause shown.").  This case has been pending since October 2023, the parties and the Court have already proceeded through one round of motion-to-dismiss briefing, and proceedings should not be delayed any further by requiring new briefing.  Additionally, Lenk has not suggested any amendments he would have made to the FAC if Monolithic had complied.  *See Wine Educ. Council v. Ariz. Rangers*, 2020 WL 7352632, at *9 (D. Ariz. 2020) (declining to strike motion to dismiss for failure to comply with LRCiv 12.1(c) where the movant "offered to withdraw the motion if . . . any deficiencies could be cured by amendment" and the non-movant "declined").  Good cause exists to consider Monolithic's motion, LRCiv 83.6, as it will further the "just, speedy, and inexpensive determination of" this case, Fed. R. Civ. P. 1.  *See Hoffard v. County of Cochise*, 2021 WL 2685637, at *1 n.2 (D. Ariz. 2021) (considering a motion to dismiss on the merits, even after noncompliance with

1    LRCiv 12.1(c), "in the interest of judicial economy").

2        Because Monolithic's motion is not stricken and it is undisputed that the motion was

3    timely filed, (*see* Docs. 30, 31), the motion is a valid response to the FAC.  Accordingly,

4    default is not proper and Lenk's motion for entry of default is denied.

5    **III.    MOTION TO DISMISS THE FAC**

6        Monolithic argues the FAC has not cured the deficiencies raised in the Order

7    dismissing Lenk's first Complaint and, in fact, "violates both of the Court's admonitions"

8    from the Order.    (Doc. 31 at 2–3.)    Specifically, Monolithic argues the

9    "retaliation/whistleblower claims are predicated on [Lenk's] allegations of [Monolithic's]

10    conduct during his one-year employment . . . and on his filing of the meritless *Lenk I–IV*

11    cases that were dismissed with prejudice" and, if there is any new material, "it contains

12    nothing more than pure speculation about his inability to obtain employment in 2021-

13    2022." (*Id.* at 3.)  Furthermore, "even assuming Lenk could get past his pleading hurdles,

14    he has failed to exhaust administrative remedies and some of his claims are time barred."

15    (*Id.* at 4.)

16        **A.    Legal Standard**

17        The Court liberally construes the pleadings of *pro se* plaintiffs.  *Draper v. Rosario*,

18    836 F.3d 1072, 1089 (9th Cir. 2016).  "To survive a motion to dismiss, a complaint must

19    contain sufficient factual matter, accepted as true" and construed in a light most favorable

20    to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

21    556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is plausible if the plaintiff

22    pleads "factual content that allows the court to draw the reasonable inference that the

23    defendant is liable for the misconduct alleged." *Id.*  In making this determination, the Court

24    does not accept legal conclusions as true, nor does the Court consider "[t]hreadbare recitals

25    of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *see*

26    *also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further

27    factual enhancement." (alteration in original) (quotation marks omitted)).  That said, "a

28    complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual

1   allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  A

2   "well-pleaded complaint may proceed even if" actual proof of those facts "is improbable[]

3   and . . . a recovery is very remote and unlikely."  *Id.* at 556 (quotation marks omitted).

**B.    Discussion**

**1.    Request for Judicial Notice**

6   Monolithic's request for judicial notice of certain documents will be addressed

7   before the merits of Monolithic's motion to dismiss.  (Doc. 32.)  Monolithic requests

8   judicial notice of the following:  (1) Lenk's October 2022 charge filed with the Arizona

9   Civil Rights Division (the "CRD"), (2) the July 2023 notice of right to sue from the CRD,

10  (3) Lenk's October 2023 amended charge filed with the CRD, (4) the CRD's October 2023

11  dismissal notice, (5) Lenk's November 2023 EEOC charge withdrawal notice, and (6) two

12  orders from *Lenk IV*.  (*Id.* at 1–2.)  Lenk did not oppose Monolithic's request or dispute

13  any document's authenticity.

14  Monolithic's request to take judicial notice of the requested documents is granted.

15  *See, e.g.*, *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (stating courts "may take

16  notice of proceedings in other courts, both within and without the federal judicial system,

17  if those proceedings have a direct relation to matters at issue" (citation omitted)); *Doria v.

18  Yelp Inc.*, 2024 WL 1740015, at *3 (D. Ariz. 2024) (taking judicial notice of documents

19  filed with the CRD and right-to-sue letter from the EEOC and collecting cases in which

20  courts took judicial notice of EEOC filings).

**2.    Hiring Discrimination Claims**

22  Lenk's first five causes of action relate to his allegations that Monolithic

23  discriminated against him based on his age and his race in declining to hire him for several

24  positions between 2021 and 2022.  (*See* Doc. 26 ¶¶ 59–71 (Age Discrimination in

25  Employment Act ("ADEA") claims), 72–76 (California Fair Employment and Housing Act

26  ("FEHA") discrimination claim), 77–82 (Arizona Civil Rights Act ("ACRA")

27  discrimination claim), 83–91 (Washington Law Against Discrimination ("WLAD")

discrimination claim).)[3]  Monolithic argues these claims should be dismissed because Lenk has not sufficiently pled that Monolithic's decision to not hire him was based on a discriminatory reason.  (Doc. 31 at 8–9.)

### a.    Race Discrimination Claims (ACRA and WLAD)

Monolithic contends "Lenk did not list either his race or ethnicity on [his] job application," and there is "nothing to suggest that . . . people who knew Lenk were involved in the decision" not to hire him.  (*Id.* at 9.)  Lenk responds that Monolithic would be unlikely to forget him considering Monolithic "spent more than nine years . . . and more than $840,000" litigating against him.  (Doc. 37 at 5 (emphasis and quotation marks omitted).)[4]

Monolithic is correct that Lenk has not pled sufficient facts to support an inference that Monolithic declined to hire him because of his race.  A "plaintiff must prove intentional discrimination to make out a discrimination claim using a disparate treatment theory." *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) ("[T]he Arizona Civil Rights Act is generally identical to Title VII, and therefore federal Title VII case law [is] persuasive in the interpretation of [the Arizona] Civil Rights Act." (second and third alterations in original) (quotation marks omitted)); *Hedenburg v. Aramark Am. Food Servs., Inc.*, 476 F. Supp. 2d 1199, 1208 n.6 (W.D. Wash. 2007) ("In interpreting the WLAD, Washington courts rely upon cases interpreting Title VII."); *cf. Peña v. Clark County*, 2023 WL 5822421, at *5 (W.D. Wash. 2023) (noting, however, that the WLAD "directs that its provisions shall be construed liberally" (quotation marks omitted)).  Accordingly, an "employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race." *Robinson*, 847 F.2d at 1316.

As one application shows, Lenk did not identify his race or ethnicity, (Doc. 26 at 34–35.), nor does Lenk allege he identified his race or ethnicity in any subsequent

---

[3]    Lenk's FEHA claims will be addressed in a separate section of this Order.
[4]    Lenk attached several exhibits to his response, (Doc. 37 at 19–27), which may not be considered because they were not included in the FAC and are not subject to judicial notice. *See Gibson v. Cmty. Dev. Partners*, 2022 WL 10481324, at *3 n.7 (D. Or. 2022).

application, (*see id.* ¶¶ 9–17).  Although Lenk argues Monolithic is "certainly not going to forget" him and his race given their litigation history, (Doc. 37 at 5), it is conjecture to assume that this played a role in Monolithic's hiring application process.  Accepting Lenk's argument would require speculation—without any factual support—that whoever or whatever[5] reviewed his application knew him from his one year of employment with Monolithic almost a decade ago, (Doc. 26 at 37), or knew of his litigation history with Monolithic; independently knew his race; and decided not to hire him because of it.  *Cf. Ali v. ServiceNow, Inc.*, 2019 WL 11542365, at *4 (N.D. Cal. 2019) (dismissing claims of race discrimination where the plaintiff did not allege that the "hiring managers and interviewers" who allegedly only hired individuals of a certain race "were involved in the decision-making process *for the positions to which he applied*" and because he had not alleged "anyone at [the employer] was actually aware of his national origin, race, religion, or age," noting that the argument that the employer "deduced his religion from his last name and deduced his national origin from an entry on his resume [was] speculative").[6] Although all reasonable inferences must be made in Lenk's favor, the logical leaps necessary to bridge Lenk's pled facts to an inference of discrimination are not reasonable. *See, e.g.*, *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1565 (2025) ("Plausibly does not mean probably, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quotation marks omitted)); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) ("[T]he court [is not]

---

[5]    Lenk suggests that Monolithic employs artificial intelligence to screen applicants. (Doc. 26 ¶ 75; *id.* at 62 (warning Lenk in application process that Monolithic "may use an artificial intelligence algorithm to provide an initial comparison of an applicant's education, experience, and skills . . . . [to] produce[] a Profile Relevancy score, which is intended to be one of many factors that a potential employer will review in making its interview decisions").)

[6]    At times, the FAC suggests that, merely because Monolithic employs many Asians, Monolithic *de facto* discriminates against non-Asians.  (*See* Doc. 26 ¶ 39 ("[Monolithic's] US Asian employment occurs at 10 times the rate of [Bureau of Labor Statistics] employment . . .  These significant statistical deviations support *prima facie* discrimination; further supported by . . . photos [in a report] . . . indicating the demographics they seek." (citation and emphasis omitted))   "[I]t is not self-evident that decision-makers who happened to be [Asian], by virtue of their status as such, would discriminate against [Lenk] based on his race . . . and the [FAC] fails to allege factual allegations explaining [his] premise."  *See Ali*, 2019 WL 11542365, at *4.  These allegations are thus speculative as well.  *See id.*

required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (alterations in original) (citation omitted)); *Eggleston v. Klemp*, 2007 WL 1468686, at *4 (D. Idaho 2007) ("[A]n inference based on speculation and conjecture is not reasonable." (citation omitted)).

Because there are not sufficient *facts* pled in the FAC to infer Monolithic's hiring decision discriminated on the basis of race, these theories are dismissed in the ACRA/WLAD claims.[7] *Cf. Hunter-Rainey v. N.C. State Univ.*, 2018 WL 1092963, at *3 (E.D.N.C. 2018) (granting summary judgment to employer on race discrimination claim where "nothing in the record show[ed] that the decisionmaker (or anyone involved in the process) discriminated against [the plaintiff] because of her race (or anything else)"); *White v. Wilson*, 2018 WL 6175385, at *4 (C.D. Cal. 2018) (holding a plaintiff could not establish a prima facie case of disparate treatment under Title VII where the "selecting official [did not know] of Plaintiff's race . . . at the time of the selection").  Lenk is not granted leave to amend this theory of his ACRA and WLAD claims for the reasons addressed later in this Order.

To the extent Lenk asserts a disparate impact theory of race discrimination[8] in his ACRA and WLAD claims, he has failed to allege sufficient facts to state a claim.  To establish a "prima facie case of employment discrimination using a disparate impact theory," a plaintiff must "show that a business practice, neutral on its face, had a substantial, adverse impact on some [protected] group," typically using "statistical evidence showing that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants." *Robinson*, 847 F.2d at 1317–18.

---

[7]    Lenk's ACRA and WLAD claims encompass both race and age discrimination theories. (Doc. 26 ¶¶ 77–86.)  Dismissal of the race discrimination theories does not affect the age discrimination theories.

[8]    Lenk's ACRA/WLAD claims are not separated into distinct disparate impact and disparate treatment theories, unlike his ADEA claims. However, Lenk mentions disparate impact in his response in connection with his race discrimination claims. (Doc. 37 at 6.) Further, the ACRA and the WLAD recognize both theories. *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 196–97, 204 (Wash. 2014); *Cisneros v. Sears, Roebuck & Co.*, 660 P.2d 1228, 1229 (Ariz. Ct. App. 1982).

Lenk offers statistical evidence from a publicly available report showing the racial makeup of Monolithic's employees and asserts he was not hired so Monolithic could "achieve [its] . . . race demographics objectives."  (Doc. 26 ¶¶ 20, 36–40.)  Construing Lenk's allegations liberally, a policy to reach a certain number of individuals in various racial groups might be sufficient for a disparate impact theory, *cf. Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1545 (2025) (affirming applicability of Title VII disparate-treatment provision to discrimination against plaintiffs who are members of a majority group), although this result is unclear, particularly on the nonspecific allegations in the FAC, *see Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) ("[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." (quotation marks omitted)); *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1224 (9th Cir. 2021) ("Plaintiffs generally cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." (citation omitted)).  *Compare Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. Washington*, 770 F.2d 1401, 1406 (9th Cir. 1985) (holding compensation system that was the "result of a complex of market forces" did not "constitute a single practice that suffice[d] to support a claim under disparate impact theory"), *and Hayden v. County of Nassau*, 180 F.3d 42, 51 (2d Cir. 1999) ("Even in the absence of specific and identified discrimination, nothing in our jurisprudence precludes the use of race-neutral means to improve racial and gender representation."), *with Hung Ping Wang v. Hoffman*, 694 F.2d 1146, 1149 (9th Cir. 1982) (noting a *specific job requirement* that "seem[ed] on its face to have a disparate impact on minority applicants" was sufficient).

Another problem is that Lenk has not sufficiently pled causation, *i.e.*, that such a policy *caused* the alleged disparate impact.  *See Moussouris v. Microsoft Corp.*, 2016 WL 4472930, at *10 (W.D. Wash. 2016) (dismissing disparate impact claim where the

plaintiff's "allegations that would close [the] logical gap" between the employment practice and the alleged disparate impact "[were] conclusory"). The FAC does not contain any allegations that Monolithic's Environmental, Social, and Governance ("ESG") reporting is a factor in its personnel decisions. *Cf. Mompoint v. Dep't of Elementary & Secondary Educ.*, 2019 WL 1921631, at *3 (D. Mass. 2019) ("Although [the plaintiff] does allege certain statistics regard[ing] the diversity (or lack thereof) . . . , she does not plausibly allege how such statistics reflect the disparate impact of any particular policy or practice or the causal relationship between the two.").

Additionally, the FAC alleges Monolithic reported "more than two-thirds of [its] employees self-identified as non-Caucasian," (Doc. 26 ¶ 37 (emphasis omitted)), but Lenk does not allege any facts suggesting that Monolithic hires White employees "in a proportion smaller than their percentage in the pool of actual applicants," *see Robinson*, 847 F.2d at 1318. Put another way, the FAC does not contain any allegations concerning the racial breakdown of Monolithic's applicant pool, so it cannot be inferred, from Lenk's cited statistics alone, that Monolithic's hiring practice is unproportional or potentially discriminatory. Consequently, it cannot be inferred that Monolithic engaged in any business practice that had a "substantial, adverse impact" on members of Lenk's race, or that any such impact was *caused* by Monolithic's alleged demographics goals. *See Robinson*, 847 F.2d at 1317; *see also Moussouris*, 2016 WL 4472930, at *10 ("Plaintiffs must allege something more than the conclusory assertion that the facially neutral policy they oppose in fact causes the disparate impact they challenge.").

Accordingly, to the extent Lenk also asserts a disparate impact theory in his ACRA and WLAD claims, it is dismissed. Leave to amend will not be granted, as discussed later in this Order.

### b.    Age Discrimination Claims

As for the age discrimination claims under the ADEA, the ACRA, and the WLAD, Monolithic argues that Lenk has not "eliminate[d] an obvious alternative explanation for his failure to get the job—his outdated and insufficient qualifications," or his lawsuits

against Monolithic.  (Doc. 31 at 3, 9 (quotation marks omitted); Doc. 38 at 4.)[9]  Monolithic notes the publicly available worldwide report cited by Lenk actually shows the "number of employees in the 45+ age group [at Monolithic] steadily *increased* from 2018 through 2022, with an additional 31 such employees in 2021 and 73 more in 2022."  (*Id.*)

Lenk responds that holding a gap in an applicant's resume against the applicant is itself discriminatory against older applicants.  (Doc. 37 at 4.)  He also argues that Monolithic's use of graduation data was unlawful and that the requirement to provide graduation data has a disparate impact on older applicants.  (*Id.* at 2–3.)  Finally, Lenk points to Monolithic's "measly 4% . . . hiring of persons age 45 or older," which he argues is evidence of Monolithic's discrimination.  (*Id.* at 4.)

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire . . . any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  "A litigant can establish a violation of ADEA using either of two related theories": (1) "he can show disparate treatment—that he suffered intentional discrimination in employment because of his age," or (2) "he can show an adverse or disparate impact—that facially neutral employment practices in fact treated more harshly employees in the protected age group." *Cotton v. City of Alameda*, 812 F.2d 1245, 1247 (9th Cir. 1987).  The former requires a showing of "intentional discrimination": the plaintiff must have been "between forty and seventy years of age," he must have "applied for a position for which he was qualified," and a "younger person with similar qualifications received the position." *Id.* at 1248.  "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).  The latter requires that the plaintiff "show that a neutral practice had a significant discriminatory impact upon a protected class." *Cotton*, 812 F.2d at 1247.  In such instances, "statistical evidence usually

---

[9]      Monolithic's argument that Lenk's lawsuits could have been an explanation for why he was not hired seems to support Lenk's argument that Monolithic knew who he was in resolving his application.  (Doc. 31 at 3.)  Because counsel's arguments cannot alter the FAC's deficiencies discussed above, however, this argument is not discussed further.  *See Fin. Indem. Co. v. Messick*, 606 F. Supp. 3d 996, 1002 (E.D. Cal. 2022) ("New averments in a brief cannot cure a complaint's shortcomings.").

provides the only rational means of determining whether a facially neutral employment practice had a discriminatory impact." *Id.* ACRA and WLAD age discrimination claims are analyzed under the same framework as claims under the ADEA. *See, e.g.*, *Knowles v. U.S. Foodservice, Inc.*, 2010 WL 3614653, at *3 (D. Ariz. 2010) (ACRA); *Robinson v. Pierce County*, 539 F. Supp. 2d 1316, 1325 (W.D. Wash. 2008) (WLAD).

Lenk's disparate treatment claim is considered first. Although the parties quibble about whether the experience on Lenk's resume qualified him for the jobs he sought, (Doc. 31 at 8; Doc. 37 at 3–5), resolution of these factual issues are not proper on a motion to dismiss, *see, e.g.*, *Rat Pack Filmproduktion GMBH v. RatPac Ent., LLC*, 2024 WL 4452483, at *5 (C.D. Cal. 2024) ("The motion to dismiss stage . . . is not the time to dive into the merits of a claim or make other fact-intensive inquiries."); *Angelucci v. Mayorkas*, 2021 WL 4523690, at *4 n.7 (S.D. Cal. 2021) ("[F]actual disputes are not meant to be resolved at the motion to dismiss stage."). Lenk's allegations that he was qualified for various roles for which he applied, based on previous experience in the same roles, must be accepted as true. (*See* Doc. 26 ¶¶ 7–11, 15, 20–22.)

Monolithic also disputes Lenk's use of Monolithic's worldwide employment data, arguing that the metrics show "the 45+ age group steadily *increased* from 2018 through 2022," and argues that any comparison between its worldwide metrics and the Bureau of Labor Statistics for the United States labor force is "meaningless." (Doc. 31 at 9.) "A plaintiff may use statistics to show an intent to discriminate." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 747 (9th Cir. 2003). But regardless of whether the data supports his allegations, Lenk specifically pled that (1) he is over 40 years of age, (2) he applied for several jobs with Monolithic for which he was not hired, (3) he was qualified for those jobs, and (4) younger, less qualified individuals were hired for these roles. (Doc. 26 ¶¶ 6, 8–11, 17–19, 22–24.) Monolithic does not challenge any of these allegations. (*See generally* Doc. 31 at 9–10; Doc. 38 at 4.) Lenk sufficiently pled a disparate treatment claim under the ADEA. *See Cotton*, 812 F.2d at 1248.

Further, although Monolithic argues Lenk's claim must fail because of an

"obvious," "alternative explanation," (Doc. 31 at 8–9; Doc. 38 at 4), questions about whether Monolithic had a legitimate, non-discriminatory reason are immaterial at this stage. *See Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th Cir. 2019) (stating that the *McDonnell Douglas* framework is an "evidentiary standard" and is not the appropriate standard at the pleading stage); *Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986) (the second and third steps of the *McDonnell Douglas* framework concern whether there exists a non-pretextual, "legitimate, nondiscriminatory reason" for the alleged discriminatory action). At this stage, Lenk need only "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Even if actual proof of the factual allegations in the FAC is "improbable[] and . . . a recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (quotation marks omitted), Lenk's disparate treatment allegations are sufficient to survive dismissal. Because Monolithic does not argue any other basis for dismissal of Lenk's disparate treatment theories, its motion is denied as to Lenk's ADEA disparate treatment claim (Count One) and any disparate treatment theory under the ACRA (Count Four) or the WLAD (Count Five) premised on age, if asserted.

Considering Lenk's disparate impact claim, Lenk has stated a plausible claim on its face. Construing the FAC liberally, Lenk alleges that a specific practice by Monolithic—requesting and utilizing graduation data—has a disparate impact on older applicants. (Doc. 26 ¶¶ 8, 25; Doc. 37 at 2–3.) Lenk also alleges Monolithic's practice of using photographs and testimonials on its website "favoring younger age groups"—such as only including photos and testimonials from employees under 40 years of age—and "focus[] on education of younger employees" also results in age discrimination. (Doc. 26 ¶¶ 34–35.) Lenk again cites Monolithic's public reporting data, which shows a smaller percentage of employees over 45 years of age compared to all other age groups. (*Id.* ¶¶ 26–33.)

Monolithic only disputes whether Lenk's cited statistics are sufficient to show evidence of discrimination. (Doc. 31 at 9.) Even if Monolithic is correct, this would not necessarily be fatal to Lenk's disparate impact claim. *See Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023) (stating that "statistics are not strictly

necessary" for disparate impact claims under Title VII); *Sanford v. Landmark Prot., Inc.*, 2011 WL 1877904, at *5 (N.D. Cal. 2011) ("The analysis of an ADEA claim is the same as the analysis of a Title VII claim.").  Moreover, Monolithic does not address Lenk's claims that Monolithic's use of graduation data has a disparate impact on older applicants, nor does it address the images and information contained on its website.

Accordingly, Monolithic's motion is denied as to Lenk's disparate impact claim under the ADEA and any disparate impact theories under the ACRA and WLAD premised on age, if asserted.  *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) (stating that courts "cannot manufacture arguments for [a party]" but instead "review only issues which are argued specifically and distinctly" because courts "require contentions to be accompanied by reasons" (quotation marks omitted)); *Greenwood v. F.A.A*, 28 F.3d 971, 977 (9th Cir. 1994) (holding an appellant's challenge was "waived due to his failure to present a specific, cogent argument for [the court's] consideration"); *Kuhl v. McDonough*, 2024 WL 3463350, at *10 (N.D. Cal. 2024) ("Rule 12(b)(6) places the burden of persuasion on the moving party, meaning that the party who files a motion to dismiss must explain why dismissal is warranted.").

### 3.    FEHA Claims

Monolithic next argues Lenk's FEHA claims should be dismissed for lack of exhaustion of administrative remedies.  (Doc. 31 at 10–11, 13.)  Because exhaustion is a condition precedent, this issue is addressed first.  *See Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir. 2001) ("California courts describe exhaustion as a jurisdictional prerequisite to suit under FEHA . . . . equivalent to statutes of limitations . . . .").

As Monolithic argues, (Doc. 31 at 10), the FAC only alleges that Lenk filed a complaint with the EEOC and received a right to sue letter in July 2023, (Doc. 26 ¶ 57). Lenk has not alleged he filed a charge with the California Department of Fair Employment and Housing ("DFEH") or received from a right-to-sue letter from the DFEH.  *See Rodrigue v. Wal-Mart Stores, Inc.*, 2019 WL 13042079, at *16 (C.D. Cal. 2019) (explaining administrative requirements under California law).  Nor  does Lenk dispute

1    that he never filed a charge with the DFEH; rather, he argues that because he filed a charge

2    with the EEOC, and there is a work-sharing agreement between the EEOC and California,

3    he was not required to also file a charge with the DEFH.  (Doc. 37 at 7–8.)

4        As Monolithic correctly notes, (Doc. 38 at 11), several courts have rejected the

5    argument that an EEOC right-to-sue letter can exhaust FEHA administrative remedies.

6    *Martin v. Lockheed Missiles & Space Co.*, 35 Cal. Rptr. 2d 181, 184 (Ct. App. 1994) ("[A]n

7    EEOC right-to-sue notice satisfies the requirement of exhaustion of administrative

8    remedies *only* for purposes of an action based on Title VII."); *see also Reynoso v. County

9    of Ventura*, 2022 WL 2092909, at *5–11 (C.D. Cal. 2022) (concluding, upon review of

10   California and Ninth Circuit precedent, that a plaintiff does not "bec[o]me entitled to

11   receive [a DFEH right-to-sue letter] merely by virtue of filing an EEOC charge"); *Foroudi

12   v. Aerospace Corp.*, 271 Cal. Rptr. 3d 803, 810 (Ct. App. 2020) ("[T]he exhaustion of

13   EEOC remedies does not satisfy the exhaustion requirements for state law claims.").

14       Accordingly, because Lenk does not dispute he has not filed a charge with or

15   received a right-to-sue letter from the DFEH, his FEHA claims (Counts Three and Ten)

16   are dismissed.  Leave to amend is not granted because it would be futile in light of Lenk's

17   failure to exhaust his administrative remedies.  (Doc. 37 at 8 (Lenk admitting he "is barred"

18   from filing a charge with the DFEH).)  *See, e.g.*, *Donley v. Cooper*, 2010 WL 1608883, at

19   *2 (E.D. Wash. 2010) (dismissing complaint for lack of exhaustion where the plaintiff

20   "admit[ted] he . . . failed to exhaust his administrative remedies prior to bringing [the]

21   action"); *Foroudi*, 271 Cal. Rptr. 3d at 814 (affirming denial of leave to amend on futility

22   grounds where the plaintiff had not exhausted his administrative remedies with the DFEH).

23                    **4.    Retaliation Claims**

24       Lenk asserted claims for unlawful retaliation under the WLAD (Count Six),

25   California Labor Code (Count Seven), Title VII (Count Eight), 42 U.S.C. § 1981 (Count

26   Nine), and the Sarbanes-Oxley Act (Count Twelve).[10]

27       Monolithic argues Lenk's retaliation claims fail because (1) the alleged protected

28   _____

[10]    Lenk also asserted a retaliation claim under FEHA, but because it has been
dismissed for lack of exhaustion, the merits of the claim are not addressed.

1    activity consisted of complaints of now-precluded issues and (2) Lenk's act of filing

2    frivolous or unsuccessful lawsuits does not constitute protected activity that can form the

3    basis of a retaliation claim.  (Doc. 31 at 11–13.)  Monolithic also argues that, under the

4    FAC's allegations, Monolithic could not have retaliated against Lenk for filing his October

5    2022 EEOC complaint because the FAC states that the alleged retaliatory actions occurred

6    before that filing.  (*Id.* at 13.)

7            a.    **Claims Under WLAD, California Labor Code, and Title
8                   VII**

9            Lenk's retaliation claims under WLAD, the California Labor Code, and Title VII

10   are analyzed together, because these anti-retaliation provisions are analyzed under the same

11   framework.  *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003)

12   (WLAD); *Wong v. Wells Fargo Bank, N.A.*, 2021 WL 4243398, at *9 (N.D. Cal. 2021)

13   (California Labor Code).

14           "Title VII's antiretaliation provision forbids employer actions that 'discriminate

15   against' an employee (or job applicant) because he has 'opposed' a practice that Title VII

16   forbids or has 'made a charge, testified, assisted, or participated in' a Title VII

17   'investigation, proceeding, or hearing.'  *Burlington N. & Santa Fe Ry. Co. v. White*, 548

18   U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  The provision "seeks to prevent harm

19   to individuals based on what they do, *i.e.*, their conduct."  *Id.* at 63.  To succeed on a Title

20   VII retaliation claim, a "plaintiff must show that a reasonable employee would have found

21   the challenged action materially adverse, which . . . means it well might have dissuaded a

22   reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68

23   (quotation marks omitted).  This "standard is tied to the challenged retaliatory act, not the

24   underlying conduct that forms the basis of the Title VII complaint."  *Id.* at 69.

25           Filing a lawsuit alleging discrimination and retaliation constitutes protected activity.

26   *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008); *Lenk IV*, 2021 WL

27   5233078, at *5 ("Lenk has alleged that he engaged in protected activity in 2012 by filing a

28   lawsuit against [his former employer], satisfying the first element [of a Title VII retaliation

claim].").  Although Monolithic argues Lenk's lawsuits do not qualify because they were ultimately deemed "meritless," (Doc. 31 at 12–13), Monolithic does not offer any persuasive authority in support.  Monolithic's cited authority pertains to whether a litigant had a reasonable belief he opposed unlawful conduct or (arguably) unlawful conduct, but Monolithic provides no support to show Lenk did *not* reasonably believe he opposed unlawful conduct in any of his lawsuits or that the conduct of which he complained, if proven true, would not have been unlawful.  (*See id.* at 12.)[11]

Indeed, the *Lenk I–II* courts did not make a finding of frivolousness or subjective bad faith, *Lenk I*, 2015 WL 6152475; *Lenk I*, 2015 WL 7429498; *Lenk I*, 2016 WL 1258862; *Lenk II*, 2017 WL 2491597; *Lenk II*, 2017 WL 1832198, and the *Lenk III* court held that Lenk did *not* act with subjective bad faith in litigating that suit, *Lenk III*, 2020 WL 4673950, at *3.  In fact, the *Lenk III* court stated that Lenk "appear[ed] sincere in his belief that [Monolithic] harassed and retaliated against him during and after his employment."  *Lenk III*, 2020 WL 4673950, at *3.  It was not until *Lenk IV* that the court deemed Lenk's continued litigation conduct groundless and in bad faith.  *See Lenk IV*, 2022 WL 824233, at *5–6 ("In the present case . . . the Court has found that all of Lenk's claims were frivolous, unreasonable, and groundless when brought . . . .  Moreover, when dismissing the present case, the Court found that Lenk's insistence on reasserting claims based on his alleged constructive discharge in the face of three adverse judgments suggests that he is acting in bad faith." (quotation marks omitted)).

In light of the Ninth Circuit's admonition for "liberal treatment of a plaintiff's complaint at the pleading stage," *Austin*, 925 F.3d at 1137, and Monolithic's failure to provide any authority that a lawsuit cannot constitute protected activity if ultimately deemed to be without merit, *Kuhl*, 2024 WL 3463350, at *10, Lenk's retaliation claims are

---

[11]    In his response, Lenk included two quotations that, upon Monolithic's and the Court's review, did not appear in Lenk's cited cases.  (Doc. 37 at 9–10; Doc. 38 at 5.)  Lenk is admonished that he is subject to Rule 11, which authorizes sanctions for misrepresentations.  *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (under Rule 11, courts may sanction parties for "misrepresenting facts or making frivolous legal arguments" and parties are required to read "and thereby confirm the existence and validity of" legal authorities).

not dismissed to the extent they are premised on his previous lawsuits.

Any retaliation claim premised on the filing of the EEOC complaint, however, is dismissed. (Doc. 26 ¶ 99.) The EEOC complaint cited in Lenk's FAC was filed in October 2022, (*id.* at 53), but as Monolithic notes, (Doc. 31 at 13), Monolithic's alleged blacklisting occurred between July 2021 and March 2022, (*id.* ¶¶ 42, 46, 48–50, 52, 99), months before Lenk filed the EEOC complaint. Logically, it would not have been possible for Monolithic to retaliate against Lenk for something that had not yet occurred. *See, e.g.*, *Morgan v. Napolitano*, 2010 WL 3749260, at *6 (E.D. Cal. 2010) ("As a matter of logic, one cannot be retaliated against for conduct in which he has not yet engaged."); *Tsao v. County of Los Angeles*, 2009 WL 4705422, at *8 (C.D. Cal. 2009) (dismissing retaliation claim where plaintiff did not file EEOC complaint until after the alleged retaliation because "it is not possible that [the defendant] could have retaliated against Plaintiff for an act which she had not yet committed"). Lenk does not allege any facts that would cure this deficiency in his response, (Doc. 37 at 9–10), which suggests he does not have any additional facts to plead, and it is not clear what additional facts Lenk could plead to cure the logical inconsistency identified above. Leave to amend for this theory is thus denied. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (stating that a district court should grant leave to amend "unless . . . the pleading could not possibly be cured by the allegation of other facts" (citation omitted)).

### b.    Title VII Exhaustion

Because Lenk's Title VII retaliation claim was not dismissed above, Monolithic's separate argument that Lenk failed to exhaust his administrative remedies for his Title VII retaliation claim must be addressed. (Doc. 31 at 13; Doc. 38 at 11.) Monolithic only devotes a single paragraph to this argument in its motion and reply, arguing that Lenk filed his charge with the CRD "more than 180 days after the alleged unlawful employment practice occurred." (Doc. 31 at 13 (quotation marks omitted)). But Monolithic acknowledges that a plaintiff has 300 days from the date of the alleged employment misconduct to institute proceedings with a state administrative agency, (*id.*), which Lenk

did, (Doc. 26 at 53).  Lenk alleged in his CRD charge that Monolithic discriminated and retaliated against him between January and July 2022, which is within the 300-day period. (Doc. 32-1 at 10.)  Monolithic has not argued the CRD charge was insufficient to exhaust remedies of an EEOC claim or which aspects of his Title VII claim should be dismissed in light of the timeliness of this charge.  (*See generally* Doc. 38 at 11; Doc. 32-1 at 3 (stating that a "copy of [the] charge [was] also . . . referred to the [EEOC] as a complaint filed under their jurisdiction"); *id.* at 10 (titling form as "Arizona Attorney General's Office, Civil Rights Division and EEOC").)  Nor does Monolithic address the effect of Lenk's withdrawal of his charge on whether Lenk exhausted his administrative remedies.  (*See* Doc. 32-1 at 17, 19.)

Accordingly, whether any such arguments would be sufficient to dismiss Lenk's Title VII claim will not be addressed at this time, and Lenk's claim is not dismissed on this basis.  *Vasquez v. Wash. Dep't of Veterans Affs.*, 746 F. Supp. 3d 1011, 1022 (W.D. Wash. 2024) ("Title VII's charge-filing requirement is not jurisdictional, but rather is an affirmative defense that the defendant must plead and prove. . . .  [A] motion to dismiss based on a failure-to-exhaust defense should only be granted if the defense is clearly indicated and appear[s] on the face of the pleading." (third alteration in original) (quotation marks omitted)); *Kuhl*, 2024 WL 3463350, at *10.

### c.    SOX Claim

Monolithic argues Lenk's SOX claim should be dismissed for several reasons.  First, it argues Lenk's SOX complaint is "based entirely on [Monolithic's] alleged misconduct in 2012-2013," in violation of the Court's previous order that the FAC "must not allege any facts or claims predicated thereon already rejected in *Lenk I-IV*."  (Doc. 31 at 11–12; *id.* at 14; Doc. 25 at 12.)  Second, Monolithic argues that "any claim raised in 2024 based on alleged discrimination in 2013 would clearly be time-barred under the 180-day statute of limitations."  (Doc. 31 at 14.)  Third, Monolithic argues that, to the extent the SOX claim is premised on Monolithic's failure to hire Lenk, it is subject to dismissal because Lenk was not an employee and therefore not protected under SOX, and because these allegations

are time barred.  (*Id.*)

SOX provides that covered entities and their agents may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of a[] [covered] lawful act done by the employee."  18 U.S.C. § 1514A(a).  An individual who "alleges discharge or other discrimination" in violation of SOX may either file a complaint with the Secretary of Labor or, if the Secretary of Labor "has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," bring an action in federal court.  *Id.* § 1514A(b)(1).  Any "action . . . shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation."  *Id.* (b)(2)(D).

Monolithic is correct that Lenk's SOX claim should be dismissed to the extent the claim is premised on events that took place during Lenk's employment, (Doc. 26 at 55–58), because this claim is either (1) barred by claim or issue preclusion several times over, for the reasons explained by this and other courts in the multiple iterations of Lenk's employment claims, (Doc. 25 at 2–4, 8–9); or (2) time-barred because Lenk did not file his SOX complaint within 180 days of the alleged misconduct, which occurred over a decade ago, (*compare* Doc. 26 ¶ 133, *and id.* at 55–58, *with* Doc. 25 at 2).  18 U.S.C. § 1514A(b)(2)(D).

As for events that occurred after Lenk was discharged,  Monolithic's argument that Lenk fails to meet the definition of an "employee" under SOX is unavailing.  Regulations promulgated by the Department of Labor define an "employee" as "an individual presently *or formerly* working for a covered person, an individual *applying to work for* a covered person, or an individual whose employment could be affected by a covered person."  29 C.F.R. § 1980.101(g) (emphases added).  Other courts have looked to this regulation to hold that former employees can be protected under SOX.  *See Kshetrapal v. Dish Network, LLC*, 90 F. Supp. 3d 108, 113–14 (S.D.N.Y. 2015) (rejecting motion to dismiss SOX claim for post-termination conduct where "a contrary holding would discourage employees from

exposing fraudulent activities of their former employers for fear of retaliation in the form of blacklisting or interference with subsequent employment"); *id.* at 113 n.3 ("Interpreting the term 'employees' to include 'former employees' is also consistent with recent Supreme Court authority that the term 'employee' should be interpreted expansively in the context of Section 1514A.").

Some courts have rejected reliance on previous versions of this regulation because the notice of final rulemaking stated that the rules were "not intended to provide interpretations of [SOX]." *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 593 (S.D.N.Y. 2012) (quoting *Procedures for the Handling of Discrimination Complaints Under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002*, 69 Fed. Reg. 52104, 52105 (Aug. 24, 2004)). Because Monolithic has not engaged in this analysis in its briefing, Lenk's SOX claim will not be dismissed on this ground. *Kuhl*, 2024 WL 3463350, at *10.

Monolithic's argument that the SOX claim is time barred, to the extent it is premised on post-discharge events, also fails. Monolithic argues Lenk had 180 days after the alleged retaliatory conduct to bring suit in federal court. (Doc. 38 at 6.) Monolithic cites SOX, which applies the 180-day statute of limitations to an "action under paragraph (1)." 18 U.S.C. § 1514A(b)(2)(D). Paragraph (1) in turn includes both "filing a complaint with the Secretary of Labor" and "if the Secretary has not issued a final decision within 180 days of the filing of the complaint . . . bringing an action at law or equity for de novo review in the appropriate district court of the United States." *Id.* (b)(1).

Although appealing on the surface, Monolithic's argument that the 180-day statute of limitations applies to commencement of an action in federal court may not be correct. Monolithic has not cited a decision from any court interpreting the statute in this way, nor has the Court found such a decision in its independent research. In fact, several courts describe the act of filing in federal court after exhausting administrative remedies as a "kick-out" process "if the administrative process drags on too long," *Jaludi v. Citigroup & Co.*, 57 F.4th 148, 152 (3d Cir. 2023), which transfers jurisdiction over a SOX complaint

1    from the Department of Labor to federal court.  *See, e.g.*, *King v. Ind. Harbor Belt R.R.*,
2    2017 WL 9565363, at *5 (N.D. Ind. 2017).  With other statutes containing similar kick-out
3    processes, courts have interpreted the statute of limitations to apply to the initial filing with
4    the agency, not to the later federal court filing in which the "action in district court . . .
5    replaces[] a timely commenced action before the [agency]" and "requires the district court
6    to step into the place of the agency."  *See Despain v. BNSF Ry. Co.*, 186 F. Supp. 3d 988,
7    994 (D. Ariz. 2016) (discussing the Federal Railroad Safety Act's similar "kick-out"
8    process).

9        Ultimately, this issue need not be resolved because Monolithic has not adequately
10   presented it.  "It is not this Court's obligation to research and construct legal arguments for
11   the parties."  *In re Feature Realty Litig.*, 2006 WL 2350178, at *4 (E.D. Wash. 2006).  And
12   it is "the parties' responsibility to cite evidence and raise arguments they want the Court to
13   consider."  *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 2019
14   WL 4565178, at *3 (C.D. Cal. 2019).  Because of the minimal briefing on this issue, the
15   Court cannot conclude Monolithic met its burden to dismiss the SOX claim premised on
16   post-discharge conduct.  *Kuhl*, 2024 WL 3463350, at *10; *Sherrill v. Bressor*, 2024 WL
17   1639155, at *5 (D. Ariz. 2024) ("Absent meaningful development of an argument for
18   dismissing the [relevant] claim, the claim will be allowed to proceed."); *Pac. Coast Fed'n
19   of Fishermen's Ass'ns v. U.S. Dep't of Interior*, 929 F. Supp. 2d 1039, 1057 (E.D. Cal.
20   2013) (declining to address argument where the defendants "cite[d] no authority to support
21   a conclusion" because "[t]he Court will not manufacture arguments for either party"); *La
22   Fontaine v. Vollucci*, 2011 WL 13217558, at *4 (C.D. Cal. 2011) (denying motion to
23   dismiss because the defendants had not "sufficiently demonstrated" their argument to
24   "conclusively prevail[] on a Rule 12(b)(6) motion").  Accordingly, the SOX claim
25   premised on post-discharge conduct may proceed.

26          **d.    42 U.S.C. § 1981 Claim**

27        Lenk's claim under Section 1981 must be analyzed separately because Lenk alleges
28   Monolithic retaliated against him because of his race.  (Doc. 26 ¶ 103.)  Monolithic argues

1    Lenk has not sufficiently pled a Section 1981 claim because the FAC does not allege

2    Monolithic "intentionally discriminated" against him on the basis of race. (Doc. 31 at 14–

3    15.) Monolithic makes similar arguments in support of dismissal that it made concerning

4    the race discrimination claims, namely that Lenk did not disclose his race on his job

5    application. (*Id.* at 15.)

6         Section 1981 "impliedly affords a federal remedy against discrimination in private

7    employment," including a retaliation theory. *Rajaram v. Meta Platforms, Inc.*, 105 F.4th

8    1179, 1181 (9th Cir. 2024) (quotation marks omitted); *Johnson v. Lucent Techs. Inc.*, 653

9    F.3d 1000, 1006–07 (9th Cir. 2011). The "legal principles guiding a court in a Title VII

10   dispute apply with equal force in a § 1981 action," so "any discussion . . . regarding [a] Title

11   VII claim[] also applies to . . . corresponding § 1981 claims." *Reynaga v. Roseburg Forest*

12   *Prods.*, 847 F.3d 678, 686 (9th Cir. 2017).

13        For the same reasons Lenk's claims for race discrimination premised on

14   Monolithic's failure to hire Lenk are deficient, Monolithic is correct that Lenk's Section

15   1981 claim should be dismissed. *Id.* Leave to amend will not be granted, for the reasons

16   discussed below. But the FAC also premises Lenk's Section 1981 claim on other alleged

17   conduct by Monolithic, including "career interference (blacklisting) at other companies[]

18   and for retaliation due to his opposition." (Doc. 26 ¶ 103.) Monolithic does not address

19   these other grounds for Lenk's Section 1981 claim, so the Court declines to dismiss these

20   other bases for this claim. *Kuhl*, 2024 WL 3463350, at *10.

21             **5.    UCL Claim**

22        Monolithic argues Lenk's California UCL claim should be dismissed because Lenk

23   "has not alleged (nor can he allege) that he has inadequate remedies at law," and he has not

24   pled that "he either parted with money, or has a vested right to receive money." (Doc. 31

25   at 15–16.) Lenk responds that he seeks restitutionary relief, which the UCL permits. (Doc.

26   37 at 11.) Monolithic disagrees, arguing Lenk is "seeking money damages to compensate

27   him for *not* being hired," and this relief is inappropriate under the UCL. (Doc. 38 at 7.)

28        A plaintiff "must establish that []he lacks an adequate remedy at law before securing

equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  In the FAC, Lenk alleges he "would be employed if not for [Monolithic's] unfair competition and violations of" the UCL.  (Doc. 26 ¶ 118.)  It is unclear whether Lenk ties the alleged UCL violations to Monolithic's failure to hire him or alleged blacklisting, but construing the FAC liberally, Lenk alleges both.  Lenk claims he has an ownership interest (presumably in employment) that can be restored through the UCL.  (*Id.* ¶¶ 119–20.)  But the same harm suffered by the alleged violations of the UCL, (*id.* ¶ 121), is virtually identical to that alleged in most of his other claims.  (*Id.* ¶¶ 65, 70, 76, 82, 86, 91, 95, 100, 105, 110, 121, 140, 144, 148.)  And Lenk does not otherwise allege that he lacks an adequate remedy at law.  (*Id.* ¶¶ 112–22.)

Accordingly, Lenk's UCL claim must be dismissed.  *Barton v. Procter & Gamble Co.*, 766 F. Supp. 3d 1045, 1067–68 (S.D. Cal. 2025) (dismissing UCL claim where the plaintiffs pled "<u>no</u> allegations that the legal remedies are inadequate for the restitution . . . that they seek under the UCL").  In light of this conclusion, Monolithic's argument that Lenk has not alleged he "parted with money, or has a vested right to receive money" need not be addressed.  (Doc. 31 at 16.)  Because Lenk might be able to cure the deficiency raised in this Order and plead the UCL claim in the alternative to his other claims, *Barton*, 766 F. Supp. 3d at 1067–68 (noting the "'intra-circuit split' on whether," after *Sonner*, "courts may allow UCL claims to proceed past pleading when other adequate remedies exist"), Lenk is given leave to amend this claim.

### 6.    Blacklisting Claims

Monolithic argues Lenk's blacklisting claims under California, Washington, and Arizona law should be dismissed because Lenk has not alleged "*any* recruiter or prospective employer ever conferred with [Monolithic] about Lenk" or that Monolithic "provided any negative information about Lenk to any such person or company."  (Doc. 31 at 16.)  Instead, Monolithic argues, "[a]ll that Lenk offers is bare speculation," without acknowledging the more "plausible" explanations for why he did not get the jobs: he was not well qualified and had an "easily discovered history of filing a never-ending series of

frivolous lawsuits against a former employer."  (*Id.* at 17.)

### a.    Arizona

Arizona's blacklisting statute prohibits "any understanding or agreement" in which two employers or their agents prevent or prohibit an employee from "engaging in a useful occupation."  Ariz. Rev. Stat. § 23-1361(A); *see also id.* § 23-1362(A).  Conduct that does not fall within the scope of this statute includes "a former employer . . . provid[ing] to a requesting employer . . . information concerning a person's education, training, experience, qualifications, and job performance to be used for the purpose of evaluating the person for employment."  *Id.* § 23-1361(B).  "An employer who in good faith provides information requested by a prospective employer about the reason for termination of a former employee or about the job performance, professional conduct or evaluation of a current or former employee is immune from civil liability for the disclosure or the consequences of providing the information."  *Id.* § 23-1361(C).

Lenk has not sufficiently pled a blacklisting claim under Arizona law.  The essence of Lenk's claim is that he interviewed with or submitted employment applications to various companies, there was some "sudden change in hiring attitude" in which the prospective employers stopped communicating with him, and he was not hired.  (*See* Doc. 26 ¶¶ 42–51.)  From this, Lenk concludes he has been blacklisted, because he had "excellent results" at Monolithic.  (*Id.*)  The FAC does not allege any actions taken by Monolithic, any statements made by Monolithic to Lenk's prospective employers, any interactions between Monolithic and his prospective employers, or any *facts* to support his conclusions.  This is insufficient to state a claim.  *See, e.g.*, *Lenk IV*, 2021 WL 5233078, at *9 (dismissing Arizona blacklisting claim because Lenk did not "allege[] facts sufficient to make out a plausible claim that [Monolithic] communicated with [a requesting employer]," and "bare speculation that [Monolithic] must have given [Lenk] a negative reference because he was not hired is insufficient to state a claim"); *Riley v. City of Prescott*, 2012 WL 512671, at *9 (D. Ariz. 2012) (dismissing Arizona blacklisting claim where the plaintiff did not make allegations like "specific statements made by [the]

individual Defendants" to "raise her allegations to something above speculation");
*Longariello v. Phx. Union High Sch. Dist.*, 2009 WL 4827014, at *1, 6 (D. Ariz. 2009)
(dismissing Arizona blacklisting claim based on allegations that the plaintiff interviewed
with an employer who initially "agreed that Plaintiff was qualified" but was not hired for
a position, because the complaint "contain[ed] no allegation that Defendant took any action
to prevent Plaintiff from engaging in any other employment or occupation").

Lenk comes closest to specifically alleging an action taken by Monolithic—as
opposed to vague and conclusory statements, (*see* Doc. 26 ¶¶ 44, 48)—in two instances.
First, he alleges he was asked by a recruiter to provide a Human Resources contact at
Monolithic, which Lenk did. (*Id.* ¶ 53.) After this, the interview process "completely
stopped and Lenk was no longer considered" for a position. (*Id.*)[12] But Lenk does not
allege that the information he provided to the recruiter was given to the prospective
employer (either by the recruiter or Lenk), or that a conversation happened between
Monolithic and the prospective employer. (*See id.*) Second, Lenk alleges he had an
interview with an employer in which the interview "focused on querying Lenk about
[Monolithic] and interactions with" a Monolithic employee," (*id.* ¶ 47), but the FAC is
again devoid of any allegations that connects this event to an action taken by Monolithic.

Even if he made such allegations, however, it is not clear whether they would rise
"to something above speculation," *Riley*, 2012 WL 512671, at *9, or otherwise save his
claim, considering that the blacklisting statute exempts information provided by a former
employer to a requesting employer "concerning a person's education, training, experience,
qualifications and job performance," Ariz. Rev. Stat. § 23-1361(B). This issue need not be
resolved at this time, however, because the claim as written is insufficient and will be
dismissed.

Because amendment would not necessarily be futile, *Lopez*, 203 F.3d at 1130,
Lenk's blacklisting claim under Arizona law is dismissed with leave to amend.

---

[12]    Lenk's allegations that Monolithic interfered with his relationship with a recruiter
are not considered, (Doc. 26 ¶¶ 54–55), because a blacklisting claim under Arizona law
concerns interactions between two or more *employers*, Ariz. Rev. Stat. § 23-1361(A), and
Lenk does not allege the recruiter is an employer or Monolithic's agent.

### b.    California

California prohibits a person or agent "who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment." Cal. Lab. Code § 1050; *id.* § 1054 (providing right of action). "Courts have held that section 1050 claims sound in fraud and must meet the heightened pleading standards of Rule 9(b), which requires a party to 'state with particularity the circumstances constituting fraud or mistake.'" *Freeman v. Wells Fargo & Co.*, 2023 WL 4828678, at *11 (N.D. Cal. 2023) (quoting Fed. R. Civ. P. 9(b)).

For the reasons above, and particularly in light of the application of Rule 9(b) to a claim under Section 1050, Lenk's conclusory statements that he was blacklisted—without alleging actions taken by Monolithic or what Monolithic said, if at all, that constituted a misrepresentation—require dismissal. *See, e.g.*, *Mikhak v. Univ. of Phx. Inc.*, 2022 WL 17488687, at *11 (N.D. Cal. 2022) (dismissing Section 1050 claim where the plaintiff applied for a position, was asked about her experience at a previous employer to which she responded, and subsequently never heard from the prospective employer, because the "Court need not accept as true [her] speculation that the [previous employer] might have given her a false reference"); *Lenk IV*, 2021 WL 5233078, at *8 (dismissing Lenk's California blacklisting claim because he had "not alleged any facts suggesting that [Monolithic] transmitted negative references" and made "bare speculation as to [Monolithic's] conduct"); *Rusak v. Apstra, Inc.*, 2018 WL 4219200, at *3 (N.D. Cal. 2018) (dismissing Section 1050 claim where the complaint "fail[ed] to allege any facts concerning the recipient, speaker, or content of the alleged misrepresentations" and "[a]t most" contained "speculative allegations that plaintiff's inability to obtain employment [was] due to certain undisclosed misrepresentations by" the former employer). Again, because amendment would not necessarily be futile, Lenk is given leave to amend.

### c.    Washington

Washington law prohibits, among other things, any "willful[] and malicious[]"

statement made "for the purpose of preventing any other person from obtaining employment" or "that [would] tend to influence or prejudice the mind of any employer against the person of such person seeking employment." Wash. Rev. Code § 49.44.010. Lenk has not sufficiently pled this claim because he has not alleged any statements Monolithic made to prevent Lenk from obtaining employment. *See, e.g.*, *Lenk IV*, 2021 WL 5233078, at *9 (dismissing Lenk's Washington blacklisting claim because there were no facts that Monolithic "sent or delivered a paper, letter or writing . . . for the purpose of preventing [Lenk] from obtaining employment" (alteration in original) (quotation marks omitted)); *Banks v. Yoke's Foods, Inc.*, 2014 WL 7177856, at *9 (E.D. Wash. 2014) (dismissing Washington blacklisting claim where there were no facts that statement made "was even communicated to a prospective employer or at least to someone who communicates with prospective employers"). However, leave to amend will be given for the same reasons as with the Arizona and California blacklisting claims.

### C.    Leave to Amend

As mentioned, if a pleading could be cured by the allegation of other facts, a pro se litigant is typically entitled to an opportunity to amend a complaint before dismissal of the action. *Lopez*, 203 F.3d at 1127–29. A finding of futility itself may justify not granting leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts may also consider "bad faith, undue delay, prejudice to the opposing party . . . and whether the party has previously amended his pleadings." *Id.* Finally, a court may deny leave to amend if the "movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Id.*

As discussed in this Order, amendment of Lenk's would not clearly be futile concerning his UCL claim and state-law blacklisting claims. Accordingly, Lenk is given the opportunity to amend these theories and/or claims only. Lenk must take note that an amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). Thus, after amendment, the FAC will be treated as nonexistent. *Ferdik*,

963 F.2d at 1262.  Any cause of action that was raised in the FAC and that is voluntarily dismissed or is dismissed without prejudice is waived if it is not alleged in an amended complaint.  *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

Lenk is not given leave to amend his FEHA claims because he has failed to exhaust his administrative remedies for those claims, so any amendment would be futile.  Leave to amend is not warranted for Lenk's retaliation claims to the extent premised on his filing of an EEOC complaint, because no additional facts would cure the temporal inconsistency discussed above.  Lenk is also not given leave to amend his SOX claim premised on conduct taken during Lenk's employment with Monolithic, because this would be futile as well.

Leave to amend is also denied on Lenk's race discrimination theories under ACRA and WLAD and his Section 1981 claim to the extent premised on Monolithic's failure to hire him.  Although amendment would not necessarily be futile, other factors outweigh the "strong public policy permitting amendment."  *Bonin*, 59 F.3d at 845.  Although Lenk is pro se, this is not Lenk's first occasion asserting and unsuccessfully pleading the same or similar claims against Monolithic.  Lenk alleged race discrimination under Section 1981 in *Lenk III*, which was dismissed.  *See Lenk III*, 2020 WL 619846, at *9 (dismissing Section 1981 claim because Lenk had not alleged he had been discriminated against on the basis of his race).  Lenk was on notice long before this lawsuit that to plead a successful race discrimination claim, he was required to plead *facts*—not mere conclusions or speculation—that he was subject to discrimination based on race.  *See id.* at *5, 9.  In light of this and other courts' repeated admonishments that he must provide facts to survive dismissal, (*see* Doc. 25 at 10–12), *Lenk I*, 2015 WL 7429498, at *2, 7, 9; *Lenk III*, 2020 WL 619846, at *5; *Lenk IV*, 2021 WL 5233078, at *3, 5, 8–9, and these courts' dismissal of his claims for failure to do so, Lenk's conclusory allegations in this action are made in bad faith.  Lenk has not offered a satisfactory explanation for his failure to meet the requirements of Rule 8 in view of the many opportunities he has been given and leniency he has been shown by this and other courts.  Finally, it would unduly prejudice Monolithic

to grant Lenk leave to amend these theories, given Lenk's history of insufficient pleadings and meritless suits against Monolithic, and given Monolithic has spent almost $1 million defending against them.  Denial of leave to amend is justified.

All other claims and/or theories may proceed.

## IV.    MOTION FOR LEAVE TO AMEND

Lenk seeks to amend his complaint to add BlackRock as a defendant.  (Doc. 48.) He argues that Monolithic's identification of BlackRock in its corporate disclosure statement is "of concern" because BlackRock "uses their financial leverage to drive ESG/DEI policies onto companies they invest in," citing several articles and website pages. (*Id.* at 1–5.)  He claims BlackRock's "significant ownership of [Monolithic] drove [Monolithic] to follow ESG/DEI policies" for BlackRock's own benefit and that BlackRock's policies "may be the true source of [Monolithic's] discrimination." (*Id.* at 4.) Lenk vaguely asserts BlackRock's "unjust influence . . . violated *Title VII* and other laws." (*Id.* at 5.)

Monolithic opposes the motion, arguing that (1) Lenk violated this Court's Local Rules by failing to attach the proposed amended pleading, and (2) amendment would be futile because (a) Lenk "asserts nothing that would justify piercing the corporate veil to reach [Monolithic's] shareholders" and (b) Title VII only provides liability against employers, not the owners or investors of such employers.  (Doc. 49 at 3–4.)

In his reply, Lenk attached a proposed Second Amended Complaint ("SAC"), which added BlackRock to Lenk's claims for race and age discrimination (Counts One through Five and Count Nine).  (Doc. 50 at 31–36, 39–40.)  The proposed SAC alleges BlackRock forces companies in which it invests, like Monolithic, to adopt ESG or DEI policies that caused Monolithic to discriminate against Lenk, so BlackRock is vicariously liable for the discrimination against him.  (*Id.* at 19–31.)

Monolithic was given the opportunity to file a sur-reply, (Doc. 51), which Monolithic filed, (Doc. 52).  Monolithic argues Lenk's motion should be denied because (1) the proposed claims against BlackRock suffer from the same deficiencies as Lenk's

1    claims against Monolithic, (2) BlackRock cannot be held vicariously liable in its capacity

2    as a shareholder of Monolithic, and (3) even if BlackRock could be held vicariously liable,

3    Lenk has not alleged any facts to suggest that BlackRock engaged in any leveraging

4    practices with Monolithic specifically, when it did so, or how the policies are unlawfully

5    discriminatory.  (Doc. 52 at 3–6.)

6              **A.    Legal Standard**

7              Rule 15 provides that the "court should freely give leave [to amend] when justice

8    so requires."  Fed. R. Civ. P. 15(a)(2).  As the term "freely" suggests, this "policy is to be

9    applied with extreme liberality."  *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th

10   Cir. 2018) (citation omitted).  "Although leave to amend should be given freely, denying

11   leave is not an abuse of discretion if it is clear that granting leave to amend would have

12   been futile."  *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) (citation

13   omitted).  The Court also "has discretion to deny leave to amend when there are

14   countervailing considerations such as undue delay, prejudice, [or] bad faith."  *Ctr. for*

15   *Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (quotation

16   marks omitted).

17             **B.    Discussion**

18             Monolithic is correct that Lenk's proposed claims against BlackRock lack merit, so

19   granting Lenk leave to amend to add BlackRock as a defendant would be futile.  *Chinatown*

20   *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (stating that leave to

21   amend "may be denied if the proposed amendment . . . lacks merit").[13]  First, Lenk's FEHA

22   discrimination claim (Count Three) is meritless because Lenk has not exhausted his

23   administrative remedies, as discussed above regarding his FEHA claim against Monolithic.

24   _____

25   [13]    Monolithic submitted a declaration of its Executive Vice President and Chief
     Financial Officer, which contains statements about BlackRock's engagement with
26   Monolithic. (Doc. 52-1.)  This declaration may not be considered in resolving the motion
     for leave to amend, because the "challenged pleading is to be evaluated based on its
27   allegations and documents that are incorporated by reference."  *LMNO Cable Grp., Inc. v.*
     *Discovery Commc'ns, LLC*, 2017 WL 5479614, at *3 (C.D. Cal. 2017); *see also*
28   *Entrepreneur Media, Inc. v. Roach*, 2021 WL 4134836, at *7 (C.D. Cal. 2021) (rejecting
     an argument that was "grounded in the submitted declaration outside the pleadings that the
     Court [would] not consider on a motion to amend").

1   The race discrimination claims are also meritless for the reasons discussed in this Order,

2   and Lenk does not have leave to amend.

3           Second, Lenk could not hold BlackRock vicariously liable for the remaining claims

4   Lenk proposes, under the facts alleged in the proposed SAC. Even parent companies—

5   which the proposed SAC does not allege BlackRock is—are generally not liable for the

6   "alleged discrimination of its subsidiary absent special circumstances." *Ozkan v. Am.*

7   *Casino & Ent. Props., LLC*, 2014 WL 4105065, at *4 (D. Nev. 2014); *see also Burnet v.*

8   *Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be

9   treated as separate entit[i]es. Only under exceptional circumstances . . . can the difference

10  be disregarded."); *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997)

11  (holding that the ADEA "contains no basis for disregarding the venerable corporate law

12  principle of limited liability or for otherwise extending liability to a parent corporation for

13  the discriminatory acts of its subsidiary"); *Sanford*, 2011 WL 1877904, at *5 ("The analysis

14  of an ADEA claim is the same as the analysis of a Title VII claim."); *Knowles*, 2010 WL

15  3614653, at *3 (ACRA analyzed the same as ADEA); *Robinson*, 539 F. Supp. at 1325

16  (same for WLAD). The proposed SAC does not allege facts to make this case the exception

17  to the rule: Lenk alleges BlackRock is inclined toward certain policies and goals, but as

18  Monolithic notes, (Doc. 52 at 5–6), Lenk does not allege any non-conclusory facts that

19  BlackRock accordingly influenced Monolithic's employment policies, or that BlackRock

20  even had such influence as a minority shareholder.

21          Further, even if BlackRock had exerted such influence over Monolithic, Lenk does

22  not allege any non-conclusory or non-speculative facts that any policies BlackRock

23  influenced Monolithic to implement were in fact discriminatory or had any effect on Lenk's

24  attempts to be hired by Monolithic. (*See* Doc. 50 at 19–20 (conclusory allegations that

25  BlackRock forces companies in which it invests, and consequently Monolithic, to adopt

26  undefined ESG policies that "caused" discrimination); *id.* at 23–24 (conclusorily stating

27  BlackRock has "operational and financial control over [Monolithic], especially to

28  implement BlackRock's ESG/DEI agenda" but citing to statements or articles issued at

- 34 -

different points in time about BlackRock's overarching practices or goals); *id.* at 25 (citing article that BlackRock took "voting action against . . . 22%" of non-specific companies); *id.* at 27 (conclusorily alleging BlackRock "exercised control over essential terms and conditions of employment of [Monolithic's] employees"); *id.* at 28 (citing letter concerning voting action taken "against companies on *climate* issues" (emphasis added)); *id.* at 29 (citing article asserting BlackRock "pressure[ed] utility companies to phase out traditional energy investments").)

Simply put, Lenk allegations concerning BlackRock do not tie BlackRock to Monolithic's alleged conduct apart from BlackRock's mere status as a minority shareholder. This is not enough for Lenk's proposed claims to be viable. *Cf. Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) ("A parent corporation generally is not liable for the acts of its subsidiary, *even if its subsidiary is wholly owned*." (emphasis added)). The Court thus denies Lenk's motion for leave to amend to add claims against BlackRock, without prejudice to Lenk filing a future motion for leave to amend if he can allege facts that would cure the deficiencies raised in this Order.[14]

Accordingly,

**IT IS ORDERED** that Monolithic's motion to dismiss the FAC (Doc. 31) is **granted in part and denied in part**, as follows:

(1)    Count Eleven (UCL) is dismissed with leave to amend;

(2)    Counts Thirteen (California blacklisting), Fourteen (Washington blacklisting), and Fifteen (Arizona blacklisting) are dismissed with leave to amend;

(3)    Counts Three and Ten (FEHA) are dismissed without leave to amend;

(4)    Lenk's race discrimination theories under Counts Four (ACRA) and Five (WLAD) are dismissed without leave to amend;

---

[14]    Lenk's "sur-sur-reply," (Doc. 53), was filed without authorization, so it will not be considered. *See, e.g.*, *Bond v. Comm'r of Soc. Sec. Admin.*, 2020 WL 2615970, at *1 n.1 (D. Ariz. 2020) ("Surreplies are not permitted in the District of Arizona without the court's approval."); *Kuc v. MTC Fin. Inc.*, 2012 WL 5269208, at *2 (D. Ariz. 2012) ("The Local Rules do not authorize filing a surreply without leave of court."). Furthermore, consideration of its arguments would not have changed the conclusions in this Order.

(5)    Counts Six (WLAD), Seven (California Labor Code), and Eight (Title VII), premised on retaliation for Lenk's filing of an EEOC complaint are dismissed without leave to amend, but the other premises underlying such retaliation claims may proceed;

(6)    Count Nine (Section 1981) premised on Monolithic's failure to hire Lenk is dismissed without leave to amend, but the other premises underlying the claim may proceed;

(7)    Count Twelve (SOX) premised on conduct taken during Lenk's employment with Monolithic is dismissed without leave to amend, but the other premises underlying the claim may proceed.

**IT IS FURTHER ORDERED** that Lenk may have **14 days** to file a Second Amended Complaint.  Consistent with LRCiv 15.1, Lenk shall file, concurrently with any Second Amended Complaint, a notice of filing the amended pleading that attaches a copy of the amended pleading indicating in what respect it differs from the FAC.

**IT IS FURTHER ORDERED** that Monolithic's request for judicial notice (Doc. 32) is **granted**.

**IT IS FURTHER ORDERED** that Lenk's motion for default (Doc. 42) is **denied**.

**IT IS FURTHER ORDERED** that Lenk's motion for leave to amend his complaint to add a defendant (Doc. 48) is **denied**.

Dated this 6th day of August, 2025.

Honorable Sharad H. Desai
United States District Judge