

IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE _CIVL 5.4.7.1(b)(1)_
(Rule Number/Section)

FILED _✓_        LODGED ___
RECEIVED ___     COPY ___

AUG 2 1 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

1  Kenneth Lenk, *pro se*
2  3310 South Buckskin Way
   Chandler, AZ 85286
3  (215) 668-8136
   ken_lenk@yahoo.com
4

5

6              **UNITED STATES DISTRICT COURT**

7                  **DISTRICT OF ARIZONA**

8                    **PHOENIX DIVISION**

9  **Kenneth Lenk;**                )  **2:23-cv-02083-SHD**

10         Plaintiff, *pro se*      )

11  vs.                             )  **SECOND AMENDED**

12  **Monolithic Power Systems, Inc;** )  **COMPLAINT DISCRIMINATION,**

13       Defendant                  )  **ADEA, SOX & RETALIATION**

14                                     **VIOLATIONS**

15                                     **JURY TRIAL DEMANDED**

16                                     **DAMAGES >$75,000**

17

18     Plaintiff Kenneth Lenk ("Plaintiff" or "Lenk") brings this action for

19  violations of his rights against Defendant as follows.

20

21                   <u>**NATURE OF THE ACTION**</u>

22  1.   Plaintiff asserts Defendant violated: *Age Discrimination in Employment*

23  *Act (ADEA 29 U.S.C. § 621-634); California's Fair Employment and Housing*

24  *Act California Gov. Code, § 12940; Arizona Statute A.R.S. Sec. 41-1463;*

25  *Sarbanes-Oxley (SOX) 18 U.S.C. § 1514A; California Business & Professional*

26  *Code § 17200*; and various retaliation/blacklisting laws.

27  2.   Defendant Monolithic Power Systems, Inc. (hereinafter "MPS") has

28  violated and continues to violate, has contributed to and continues to

SAC FOR DAMAGES              1

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICE
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _CIVIL 5,4,71(b)(1)_
(Rule Number/Section)

FILED ☐    LODGED ☐
RECEIVED ☐    COPY ☐

AUG 2 1 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Kenneth Lenk, *pro se*
3310 South Buckskin Way
Chandler, AZ 85286
(215) 668-8136
ken_lenk@yahoo.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

## PHOENIX DIVISION

| | |
|---|---|
| **Kenneth Lenk;** | ) **2:23-cv-02083-SHD** |
| Plaintiff, *pro se* | ) |
| vs. | ) **SECOND AMENDED** |
| **Monolithic Power Systems, Inc;** | ) **COMPLAINT DISCRIMINATION,** |
| Defendant | ) **ADEA, SOX & RETALIATION** |
| | **VIOLATIONS** |
| | **JURY TRIAL DEMANDED** |
| | **DAMAGES >$75,000** |

Plaintiff Kenneth Lenk ("Plaintiff" or "Lenk") brings this action for violations of his rights against Defendant as follows.

## NATURE OF THE ACTION

1. Plaintiff asserts Defendant violated: *Age Discrimination in Employment Act (ADEA 29 U.S.C. § 621-634); California's Fair Employment and Housing Act California Gov. Code, § 12940; Arizona Statute A.R.S. Sec. 41-1463; Sarbanes-Oxley (SOX) 18 U.S.C. § 1514A; California Business & Professional Code § 17200*; and various retaliation/blacklisting laws.

2. Defendant Monolithic Power Systems, Inc. (hereinafter "MPS") has violated and continues to violate, has contributed to and continues to

SAC FOR DAMAGES                    1

1   contribute to the violation of Plaintiff's rights guaranteed by Congress,
2   federal and state laws. Defendant's illegal activity has and continues to cause
3   Lenk to suffer monetary damages and irreparable harm to his career.

4

5                          **JURISDICTION AND VENUE**

6   3.    This Court has jurisdiction pursuant to *28 U.S.C. § 1331* and *28 U.S.C. §*
7   *1343* to redress the unlawful deprivation of Lenk's rights secured, guaranteed
8   and protected by federal law. This Court has jurisdiction under *28 U.S.C. §*
9   *1343* to address the civil rights violations and supplemental jurisdiction
10  pursuant to *28 U.S.C. § 1367* for the state law claims. This Court has
11  jurisdiction under *28 U.S.C. § 1332* due to diversity of citizenship and the
12  amount of damages claimed is greater than $75,000.

13  4.    Venue is proper under *28 U.S.C. § 1391* since MPS does business in this
14  district, since Plaintiff is domiciled in this district during MPS' illegal acts of
15  age discrimination and retaliation, and since the employment Plaintiff
16  applied to is at MPS' company office in Chandler, AZ 85826.

17

18                                **PARTIES**

19  5.    Defendant MPS is a company incorporated in Delaware (#3770168) with
20  prior operations at 79 Great Oaks Blvd San Jose, CA 95119 at times relevant.
21  MPS relocated its main office to 5808 Lake Washington Blvd. NE, Kirkland,
22  Washington 98033, their current corporate headquarters/principal operation.
23  MPS employs greater than 20 employees and is an employer pursuant to The
24  Age Discrimination in Employment Act *(ADEA) - 29 U.S.C. § 630 (b)*. MPS
25  employs greater than 15 employees and is an employer per *A.R.S. Sec. 41-*
26  *1461*; MPS employs greater than 5 employees in California and is an
27  employer per *California Gov. Code, § 12926(d)*. MPS employs at least 8
28  employees and is an employer per Washington *RCW 49.60.040 (11) & (19)*.

SAC FOR DAMAGES                              2

1    MPS' Chief Executive Officer (CEO) is Michael Hsing, Saria Tseng is the VP
2    of Legal, and Bernie Blegen is the Chief Financial Officer (CFO), replacing
3    Meera Rao. Maurice Sciammas is the Senior VP of Sales and Marketing was
4    Lenk's supervisor involved in violating Lenk's rights.

5        6.    Plaintiff Kenneth Lenk is a white 65 year old male at time of filing this
6    complaint. Lenk is domiciled in Maricopa County at 3310 South Buckskin
7    Way, Chandler, Arizona, 85286. At all times relevant, Lenk was an applicant,
8    pursuant to *Cal. Code of Regs., title 2, § 11008(a) et al.* (and for Arizona and
9    Washington statutes) for employment at MPS. Lenk is a person who alleges
10   discharge or other discrimination by any person in violation of said *18 U.S.C.*
11   *§ 1514A (a)* seeking relief under *18 U.S.C. § 1514A (b) (1).*

12       7.    Lenk has substantial knowledge of the automotive industry, analog
13   semiconductor and Battery Management Systems (BMS) in Electric Vehicles.
14   Plaintiff worked at 2 of the 3 largest worldwide automotive semiconductor
15   providers (NXP/Freescale and Renesas/Intersil), and started Maxim's
16   Automotive Business (Automotive Application Engineer / Product Definer).
17   Lenk was a valuable person for automotive semiconductor employment,
18   which MPS hired as Director of Automotive and Industrial Marketing.
19   During that time, Lenk produced excellent financial results as stated by CFO
20   Rao (93% revenue growth yr/yr) and by CEO Hsing (tripling of design wins).
21
22                        **STATEMENT OF FACTS**
23       8.    On Feb 19, 2021, Plaintiff applied for the MPS' Product Marketing
24   Manager Position #1450, a similar role MPS originally hired him for,
25   **EXHIBIT A**. Please note MPS requires graduation dates in their application.
26       9.    On Mar 24, 2021, Lenk applied for MPS' Field Application Manager
27   Position #1477. Lenk is extremely qualified for this role based on his previous
28   work experience at Maxim doing the same, per his resume, **EXHIBIT B**.

10. On Jun 09, 2021, Lenk applied for the MPS' Senior Field Application Engineer Position #1473 on MPS career website. Lenk is well qualified for the position based on his prior work doing the same function.

11. On Jul 09, 2021 Lenk applied for the MPS' Technical Marketing Manager Position #1541, since he has a similar position at MPS' competitor – Intersil/Renesas). Lenk applied for the position on MPS' website.

12. On Aug 02, 2021, MPS reposted the Field Application Manager #1477 on LinkedIn. Lenk applied, and was routed to MPS' ADP career site, which lists Lenk's original Mar 24, 2021 application.

13. On Aug 27, 2021, Lenk noted the MPS' Technical Marketing Manager Position #1541 LinkedIn reposting (listing it as 4 days old). Lenk applied, was routed to MPS' ADP, which listed his original Jul 09, 2021 application.

14. On Sept 1, 2021, Lenk was notified about a new Technical Marketing Manager role, another cancellation/reposting by MPS (Lenk applied to #1541 via LinkedIn on Aug 27, 2021). LinkedIn stated the posting as 3 days old; suggesting MPS reposted the position on Aug 30, 2021, 3 days after Lenk's Aug 27, 2021 application (removing Lenk from consideration). **EXHIBIT C**.

15. On Jan 20, 2022 Lenk being well qualified for MPS' Sr. Applications Engineer Position # 1599 in Chandler, AZ (since he held a similar position at MPS' competitor – Maxim) applied for the position on MPS' website.

16. On Jul 11, 2022, Lenk saw that #1599 re-appeared. LinkedIn stated the listing as 2 weeks old with 0 applicants. Plaintiff applied via LinkedIn and was connected to MPS (ADP) which shown Lenk's Jan 20, 2022 for this role.

17. MPS ignores Lenk's application, cancels the role and reposts positions to discriminated/retaliate against Lenk. MPS' reposting removes Lenk from consideration. On Jul 11, 2022 it became clear MPS was not considering Lenk application for the Sr. Applications Engineer Position # 1599 position in

Chandler, AZ, nor for the other positions he applied to. While Lenk is highly qualified for #1599, it remains open on Apr 08, 2024, **EXHIBIT M**.

18. Lenk is well qualified for all these roles, due to his MPS' work (producing financial success) and at MPS competitors. Instead of hiring Lenk, MPS retaliated/discriminated against him and broke the law in doing so.

19. MPS hires less qualified people for these roles, as stated by MPS own employees: *www.glassdoor.com/Reviews/Employee-Review-Monolithic-Power-Systems-RVW66521442.htm*:

> *"1. People supposed to do an automotive design **have no experience in automotive design process and standards. MPS didn't give any training on that.***
> *2. Design team is led by Product Definer. There's no Product architect, nor Design Lead. **Product Definer rules everything having no good understanding of design**.*
> *3. **BMS product line is directed unprofessionally.** Technical decisions are made using "democratic" approach, sharing responsibilities with anyone.*
> *4. Dual standards and favoritism are the main managing principles in BMS product line group. **Stay away** from this group **if you're a normal technical person"** (emphasis* added).

20. Lenk is a qualified candidate with BMS experience. MPS instead chooses to cancel out/relist positions to *'filter'* him out, to achieve their age and race demographics objectives per their <u>**MPS' May 2023 CORPORATE RESPONSIBILITY REPORT (ESG)**</u> (hereinafter -- ESG REPORT).

21. MPS ignored Lenk qualifications for the MPS' Product Marketing Manager #1450 (his role at MPS) per the comparison table **EXHIBIT D**.

22. Instead of considering Lenk, a highly qualified candidate that applied on Feb 19, 2021 for MPS' Product Marketing Manager Position #1450., MPS stymied Lenk's application, and later hired Asian George Chen in Apr, 2021.

23. Prior, MPS hired Asian employee Keng Ly to replace Lenk for the auto support and Asian Allen Chen for Lenk's Product Marketing role. While MPS focuses on Asian hiring, the ages of the persons above is equally significant,

since the MPS' ESG REPORT data validates thier age discrimination, in which the above persons were less than 40 years old when hired.

24.   Based on a Bachelor of Science degree being issued at age 21, plus the corresponding graduation dates for the above persons (per MPS' application data), Allen Chen was age 34 when hired, and George Chen, age 28.

25.  MPS uses age to discriminate as they knew Lenk's age from employment (disparate treatment age discrimination) and by the application process (disparate impact). MPS used his age as a contributing factor to exclude employment. MPS discriminates against him and other older more costly workers favoring more cost effective younger, Asian, female workers.

26.  MPS admits their own age and race discrimination in their **ESG REPORT**, page 33 extracted below (for age) **EXHIBIT E.**

**Worldwide Headcount by Gender and Age**

|  | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| Ending Head Count | 1,745 | 2,004 | 2,207 | 2,770 | 3,323 |
| Male | 1,040 | 1,212 | 1,323 | 1,603 | 1,947 |
| Female | 705 | 792 | 884 | 1,167 | 1,376 |
| Age 18 - 25 | 110 | 166 | 186 | 347 | 404 |
| Age 26 - 35 | 925 | 1,093 | 1,249 | 1,572 | 1,856 |
| Age 36 - 45 | 475 | 504 | 518 | 566 | 705 |
| Age 45+ | 235 | 241 | 254 | 285 | 358 |

27.  Selecting the age 45+ data and adding percentages produces this chart:

|  | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| **Head Count** | 1745 | 2004 | 2207 | 2770 | 3323 |
| **Age 45+ count** | 235 | 241 | 254 | 285 | 358 |
| **Age 45+ (%)** | 13.5% | 12.0% | 11.5% | **10.3%** | 10.8% |

28. MPS reduced their age 45+ employment from 13.5% down to 10.8%; 2018 to 2022 respectively), suggesting disparate impact age discrimination.

29. For 2021, MPS' **10.3%** of employment for those 45+ is substancially lower than the **44%** employed (20+17+7) for the same age 45+ age group, as reported by the 2021 U.S. Bureau of Labor Statistics (hereafter BLS) *www.bls.gov/cps/aa2021/cpsaat11b.pdf* below:

| Occupation 2021 | Total, 16 and over | 16 to 19 years | 20 to 24 years | 25 to 34 years | 35 to 44 years | 45 to 54 years | 55 to 64 years | 65 years and over | Median age |
|---|---|---|---|---|---|---|---|---|---|
| Total employed (in K) | 152581 | 5266 | 13409 | 34578 | 32734 | 30554 | 25912 | 10127 | 42.2 |
| % | | 3% | 9% | 23% | 21% | 20% | 17% | 7% | |

30. MPS' age 45+ 2021 employment rate is less than **1/4**[th] that of the BLS employment rate for the same age group. This is a significant statistical disparity. This, plus MPS declining older employee employment from 13.5% down to 10.8% (2018 to 2022) is disparate impact age discrimination. MPS' desire to age discriminate is supported by MPS' by even much lower "new hire" rate reported on page 34, **EXHIBIT F**, in the ESG REPORT:

**Worldwide New Hires by Gender and Age**

| | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| Male | 61% | 58% | 54% | 48% | 58% |
| Female | 39% | 42% | 46% | 52% | 42% |
| Age 18 - 25 | 17% | 22% | 23% | 29% | 31% |
| Age 26 - 35 | 67% | 63% | 64% | 57% | 54% |
| Age 36 - 45 | 11% | 10% | 7% | 10% | 9% |
| Age 45+ | 5% | 5% | 6% | 4% | 6% |

ESG Report
May 2023

31. The 2021 BLS US age 45+ employment is **44%**. MPS reports their employment of this age group at **1/4**[th] that of the BLS at **10.3%** with their replacement rate of **4%**, less than **1/10**[th] that of BLS US employment.

SAC FOR DAMAGES                7

32. This statistical disparity is *prima facie* discrimination, per *Watson & Reeves*. MPS willful older person employment reduction is a violation of the ADEA. MPS' age discrimination is consistent with *Rabin* since "*recruitment and hiring policies disproportionately impact applicants over the age of 40*".

33. MPS' ESG REPORT provides other examples of age discrimination since their "*recruitment and hiring policies disproportionately impact applicants over the age of 40*". This report disproportionally favor younger workers over older ones, per the photos therein, and by their own reporting strongly favoring the 26-35 year old age group (57% of MPS employment, more than double the 23% reported in the BLS 24-34 age group data), **EXHIBIT F.**

34. MPS promotes age discrimination by their internet photos on their **Career – What MPS Offers** web-site, which illustrated gym and sports photos favoring younger age groups. MPS promotes age discrimination by descriptions on their **Career – Benefits – Training** web-site, which focuses on education of younger employees. MPS promotes age discrimination via photos and descriptions on their **Career – Employee Testimonials** web-site section favoring younger (under 40 years old) employees, **EXHIBIT G.**

35. MPS utilizes photos of young people (advertising its younger workforce), promotes their development programs focused on young professionals and states their desire to attract a youthful workforce via their benefits packages specifically targeted for younger workers. By doing so, MPS intentionally and willfully age discriminates against older workers in their hiring practices.

36. MPS does not discriminate on age alone, as stated in their ESG REPORT, pg 34; excerpt below, **EXHIBIT F.**

37. This table indicates MPS' discrimination against Whites/Caucasians (29% employment rate in 2021) supporting their statement on page 32 of the ESG REPORT: "*In 2022, more than two-thirds of our employees self-identified as non-Caucasian*".

**U.S. Employee Population Racial/Ethnic Diversity***

|  | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| Hispanic or Latino | 3% | 3% | 3% | 4% | 4% |
| White | 27% | 25% | 23% | 29% | 31% |
| Black or African American | 1% | 1% | 1% | 1% | 1% |
| Native Hawaiian or Pacific Islander | 1% | 0% | 0% | 0% | 0% |
| Asian | 66% | 67% | 70% | 64% | 62% |
| American Indian or Alaskan Native | 0% | 0% | 0% | 0% | 0% |
| Two or more races | 2% | 4% | 3% | 2% | 2% |

*As reported within MPS EEO-1 Report

38. The 2021 BLS reports: *"By race, **Whites** made most of the labor force (**77 percent**). Blacks and **Asians** constituted an additional **13** percent and **7 percent**, respectively."* www.bls.gov/opub/reports/race-and-ethnicity/2021/home.htm#. MPS' US employment of Whites occurs at **1/3rd** the rate of US employment (23-31% versus 77%). Though not relevant to Plaintiff, MPS exhibits even more significant race discrimination towards Blacks, since their US employment thereof is only **1/13th** that of the 2021 BLS employment.

39. MPS' US Asian employment occurs at **10 times** the rate of 2021 US BLS employment (62-70% versus 7%). These significant statistical deviations support *prima facie* discrimination; further supported by MPS' ESG REPORT photos (pg 26) indicating the demographics they seek, **EXHIBIT J**.

40. Statistics expose discriminatory intent. The 2021 BLS data suggests normal US employment would have 2 Black employees for every Asian employee (13% s 7%). At MPS, there is 1 Black for every 65 Asian employees. Black employment at MPS occurs at **1/130th** the normal rate reported by the BLS, a significant statistical deviation supporting disparate impact. Even worse is that MPS does not any interest in improving their 1% flat line trend.

While Plaintiff excludes prior factual argument (per the court instructions), his prior protected activity is highly significant given this statistical data.

41. MPS refuses to hire Lenk due to his age and race, yet they continue their retaliation by inhibiting his career at other companies noted below.

42. At Halo Semiconductor, Lenk was phone interviewed (by CEO J. L.) for a System Applications Engineer / Product Definer position) on Jul 30, 2021. Despite the positive phone interview and the personal invitation by the CEO to visit the Dallas TX design center during the interview, Halo Semiconductor suddenly stopped communicating with Lenk.

43. This sudden and rapid change is a typical sign of blacklisting. At that time, Lenk did not submit an Application for Halo (just his resume/LinkedIn profile). Lenk did not authorize any credit/background check. Hence, Halo's change (verge of hiring to complete loss of interest) occurred outside employment background checks (commonly via personal conversations).

44. Lenk communicated with his recruiter B. H. about the loss of interest and found that he was blacklisted by Maurice Sciammas' comments.

45. On Saturday, Aug 14, 2021 Plaintiff applied to SiTime via an on-line application. On Monday, Aug 16, 2021 in the am, SiTime's Recruiting Coordinator D. Z. contacted Plaintiff to schedule an interview for later that week. D. Z. provided a prompt response, since it is uncommon in the industry to find a person that has experience with both MEMS (which Plaintiff had significant experience at Freescale) and Automotive Analog Product Line Management (the role MPS hired Lenk for). On Aug 18, 2021, at 1 pm, Plaintiff had a Zoom meeting with SiTime's Senior Marketing Director P. C.

46. The interview lacked normal marketing and skill questions. Instead, P. C. focused on querying Lenk about MPS and interactions with Bob Lucas (MPS Marketing Director), who P. C. knew. The interview ended, with P. C.

stating the negative comments from Bob Lucas keep them from moving forward.

47. Circa Sept 28, 2021, SiTime denied Lenk the Sr. Product Marketing Manager Automotive role due to blacklisting comments made by MPS' Director of Marketing, Bob Lucas, despite SiTime's strong initial interest.

48. On Oct 14, 2021 Infineon (who competes against MPS) notified Plaintiff that he is no longer being considered for *"the vacant position as Sr. Product Marketing Manager, Power Management ICs (Job Code: 323524)"*. This was a significantly similar position to that MPS hired Lenk for. Infineon claimed *"Your documents made a positive first impression"*. Lenk performed well on the interview with R. R. (Director, Product Marketing) on Aug 25, 2021. As with other interviews, Plaintiff did well initially, only to get rejected later.

49. In Oct, 2021, Plaintiff's prior work associate (at Microchip, a competitor to MPS) recommended Lenk for a Marketing role at Microchip in their analog division, for a similar (non-management) position MPS hired Plaintiff for. Personal recommendations are highly successful for employment. The personal reference was productive, and Plaintiff interviewed with Manager F. S. on Nov 2, 2021 @ 1:30 pm. This interview went well, and F. S. recommended a final interview with his marketing team. On Nov 04, 2021, K. H. from Microchip's Human Resources scheduled a 3.5 hour interview with the 8 person team for Nov 10, 2021 at 1 pm. This interview went well, per the persons therein and by F. S. post interview, F. S. told Plaintiff that Microchip's Human Resources requested a special interview with Lenk to address *"issues"*, something that F. S. was unfamiliar with and never saw before. F. S. promised to contact Lenk later to set this up, though this never occurred. On Plaintiff's information and belief, Microchip contacted MPS who provided damaging information to impede Plaintiff from being hired.

50. Given Plaintiff's excellent financial results at MPS, it's unreasonable to expect that Microchip would not want an employee to produce similar results (suggesting that MPS provided inaccurate negative information).

51. On Mar 16, 2022, Lenk was contacted by recruiter C. E. (Lenk worked with recruiter C. E. for over 20 years) for a position at his old employer Intersil (now Renesas, a MPS competitor). Lenk provided his resume to C. E. which he forwarded to personnel at Renesas. T. G. (Renesas) scheduled an interview with Lenk on Mar 18, 2022, which went well. T. G. scheduled another interview with Lenk and T. C. on Mar 24, 2022, which also went well (T. G. requested a 3rd interview for Mar 30, 2022 with T. G., D. P. and M. F.).

52. In the interim, recruiter C. E. requested information from Lenk's prior employer MPS, specifically a HR contact, which Lenk provided Allnutt. After providing Allnutt's name the interview process, which was going well up to this point, completely stopped and Lenk was no longer considered at Renesas.

53. More significant is that recruiter C. E. completely stopped his career efforts with Lenk (despite over 20 years of history and placing Lenk in roles). This is uncommon for a recruiter that financially relies on personnel contacts for their success, and suggests MPS provided false information.

54. Lenk asserts MPS' Allnutt provided false/ inaccurate information which interfered with this opportunity and his career relationship with C. E.

55. MPS has and continues to retaliate and discriminate against Lenk as demonstrated by their failure to hire, due to 1) his age and/or race and/or 2) due to his reporting of MPS' violation of Federal and State laws via legal complaint filings and/or 3) for filing a SOX Complaint circa Sept 03, 2021 noting several *Sarbanes-Oxley* violations. MPS further inhibits Lenk's career by interfering with opportunities at MPS competitors.

56. Lenk complied with the EEOC administrate requirements *by filing AZ CRD-2022-1020 (EEOC complaint 35A-2023-00023)*, received his Jul 11, 2023 right to sue letter, **EXHIBIT H**, and filed this timely complaint.

57. Lenk filed a SOX complaint on September 03, 2021 to the Department of Labor pertaining to MPS' *"failure to hire"* retaliation due to his prior reporting of SOX violations, **EXHIBIT I**.

## FIRST CLAIM FOR RELIEF
### Discrimination (Disparate Treatment)
### Age Discrimination in Employment Act of 1967 (ADEA)
### 29 U.S.C. § 623(a)(1)

58. Plaintiff incorporates all paragraphs as if fully set forth herein.

59. MPS was aware that Lenk was over 40 years old. Age was not a bona fide occupational qualification for any above positions Despite Lenk being qualified for each role, MPS denied him an opportunity for employment due to his age, supported by MPS' ESG REPORT age discrimination data.

60. Lenk filed timely charges with the EEOC and exhausted his administrative remedies. Lenk filed this complaint in a timely manner.

61. MPS conduct constitutes illegal, intentional discrimination and disparate treatment prohibited by *29 U.S.C. § 623(a)(1)*. MPS knew and showed reckless disregard for their illegal conduct, and failed to correct it.

62. Despite Lenk's qualifications, his prior excellent financial performance at MPS, his experience at competitive company's dong similar roles, and the fact that his peers/subordinates are successful at MPS, they failed to hire Lenk for numerous positions he was well qualified for due to his age.

63. MPS hired less qualified workers for these positions. MPS removed and reposted positions to exclude Lenk due to their illegal age screening.

1   64. As a direct result of MPS' willful and intentional discriminatory

2   policies and practices of violating the *ADEA*, Lenk has and continues to suffer

3   damages including, but not limited to, lost past and future income,

4   compensation, diminished employment opportunities, humiliation,

5   embarrassment and benefits. Lenk is entitled to all remedies available for the

6   *ADEA* violations including attorneys' fees, for MPS' age discrimination.

7

8   ## SECOND CLAIM FOR RELIEF

9   ## Discrimination (Disparate Impact)

10  ## Age Discrimination in Employment Act of 1967 (ADEA)

11  ### *29 U.S.C. § 623(a)(2)*

12  65. Plaintiff incorporates all paragraphs as if fully set forth herein.

13  66. MPS violated the ADEA by their discriminatory policies, patterns,

14  and/or practices that have a disparate impact on applicants ages 40 and over

15  by: 1) advertising their preference for hiring and retaining younger

16  employees as identified in their web career postings and 2) by their own ESG

17  REPORT acknowledging their age discrimination disparate impact.

18  67. Lenk, a job applicant, argues disparate impact claim pursuant to

19  *Rabin*. MPS age disparate impact has harmed Lenk from regaining

20  employment for roles he is highly qualified for, due to his age.

21  68. MPS' foregoing policies, patterns, and practices have an unlawful

22  disparate impact on applicants and prospective applicants ages 40 and older

23  in violation of *29 U.S.C. § 623(a)(2)* per *Heath v. Google LLC, Case No. 15-cv-*

24  *01824-BLF, 5 (N.D. Cal. Aug. 15, 2019).*

25  69. As a direct result of MPS' willful and intentional discriminatory

26  policies and practices described above, Lenk has suffered damages including,

27  but not limited to, lost past and future income, compensation, diminished

28  employment opportunities, humiliation, embarrassment and benefits.

1    70. Lenk is entitled to all remedies available for the *ADEA* violations

2    including attorneys' fees, due to MPS' illegal age discrimination.

3

4    **THIRD CLAIM FOR RELIEF**

5    **California Fair Employment and Housing Act (FEHA)**

6    ***California Gov. Code § 12940***

7    ***(age and race discrimination)***

8    71. Plaintiff incorporates all paragraphs as if fully set forth herein.

9    72. Lenk complied with administrative filing requirements by filing *EEOC*

10   *complaint 35A-2023-00023* to address the age/race discrimination. Lenk

11   applied to MPS positions in California, and MPS is subject to California law.

12   73. As pled, Lenk alleges MPS age and race discriminated against him for

13   employment in violation of *California Gov. Code § 12940(a)(d)(k)*. MPS favors

14   younger, non-Caucasian employees, as stated in the ESG REPORT and as

15   illustrated on noted on page 26 of same, **EXHIBIT J**. In each instance, MPS

16   failed to *"take all reasonable steps necessary to prevent discrimination"*.

17   74. Lenk has and continues to suffer unemployment due of MPS' illegal age

18   and race discrimination, in violation of the *California Gov. Code, §*

19   *12940(a)(d)(k)* as alleged. MPS knew and showed reckless disregard that its

20   illegal conduct was in violation of the *California Gov. Code, § 12940(a)(d)(k)*.

21   MPS illustrated their malice and oppression by removing/reposting positions

22   Lenk was qualified for, to exclude him, due to his age and race. MPS

23   committed further malice by creating/utilizing an AI (Artificial Intelligence)

24   employment system, **EXHIBIT K**, to use application (age) data to "filter"

25   applications purposely to discriminate against older Whites and others.

26   75. As a result of MPS' willful and intentional discrimination, Lenk has

27   and continues to suffer materially adverse harm, including, but not limited to

28   loss of career, lost wages/benefits, diminished employment opportunities,

1  humiliation and embarrassment. By reason of MPS' illegal discrimination,

2  Lenk is entitled to all remedies available for violations of the *California Gov.*

3  *Code, § 12940 et seq*, including attorneys' fees, compensatory damages,

4  including damages for emotional distress and punitive damages. Since MPS'

5  conduct was done with malice, oppression, and/or fraud, Plaintiff is entitled

6  to exemplary and/or punitive damages per *California Civil Code § 3294(c).*

7

8  ## FOURTH CLAIM FOR RELIEF

9  ### Arizona Civil Rights Act – Age/Race Discrimination

10  ### *A.R.S. § 41-1463*

11  76.  Plaintiff incorporates all paragraphs as if fully set forth herein.

12  77.  Lenk complied with the Arizona's Civil Rights administrate

13  requirements by filing *AZ CRD-2022-1020*, received his right to sue and filed

14  this complaint in a timely manner.

15  78.  Lenk alleges that MPS age and race discriminated against him in his

16  application for employment at MPS' Chandler, AZ location in violation of

17  *A.R.S. § 41-1463(B)(1):* by their failure or refusal to hire.

18  79.  MPS discriminates against older, Whites/Caucasians as stated in their

19  ESG REPORT, despite Lenk's skill match for the position(s).

20  80.  Lenk alleges he has and continues to suffer unemployment because of

21  MPS' illegal activity, in violation of *A.R.S. § 41-1463* as pled. MPS knew and

22  showed reckless disregard for their illegal conduct.

23  81.  As a result of MPS' willful and intentional age discrimination, Lenk

24  suffered and continues to suffer materially adverse harm, including but not

25  limited to loss of career, lost wages, benefits, diminished employment

26  opportunities, humiliation and embarrassment. Lenk is entitled to all

27  remedies available for the *A.R.S. § 41-1463* violations including attorneys'

28  fees, due to MPS' illegal age discrimination.

1

2             **FIFTH CLAIM FOR RELIEF**

3       **Washington Law Against Discrimination (WLAD)**

4            *RCW 49.60.180 & RCW 49.44.090*

5             *(age and race discrimination)*

6   82. Plaintiff incorporates all paragraphs as if fully set forth herein.

7   83. MPS refused to hire or consider Lenk for employment, even though well

8 qualified for the positions, due to his age and race, which violates *RCW*

9 *49.60.180 (1) & (3)* and *RCW 49.44.090* for age.

10   84. As pled, age, and race were motivating factors MPS used to exclude

11 Lenk from employment. MPS' illustrates their disparate treatment and

12 impact (both age and race) via their internet photos, statements and

13 publications (ESG REPORT) clearly discouraging older White males (and

14 others). MPS statement that *"more than two-thirds of our employees self-*

15 *identified as non-Caucasian"*, discourages, limits and discriminates against

16 Caucasians from considering employment, a violation of *RCW 49.44.090 (2)*.

17   85. As a result of MPS' willful and intentional discrimination, Lenk

18 suffered and continues to suffer materially adverse harm, including but not

19 limited to loss of career, lost wages, benefits, diminished employment

20 opportunities, humiliation and embarrassment. Lenk is entitled to all

21 remedies available for violations pursuant to *RCW 49.60.030(2)*.

22

23            **SIXTH CLAIM FOR RELIEF**

24  **Washington Law Against Discrimination (WLAD) -- Retaliation**

25               *RCW 49.60.210*

26   86. Plaintiff incorporates all paragraphs as if fully set forth herein.

27   87. MPS retaliated against Plaintiff for his reporting of unfair/illegal

28 practices and for his protected whistleblower participation opposing such

1  activities including, but not limited to filing of Court complaints resisting
2  discrimination, and filing of EEOC and SOX complaints, as pled.

3  88. MPS retaliatory actions violate *RCW 49.60.210(1)* since MPS
4  *discriminate against any person ...because he or she has filed a charge,*
5  *testified, or assisted in any proceeding under this chapter.*

6  89. Plaintiff established a *prima facie* claim, since he participated in a
7  statutorily protected activity, MPS took adverse employment action against
8  him, and a strong casual link exists between the activity and adverse action.

9  90. As a result of MPS' willful and intentional retaliation, Lenk has
10  suffered and continues to suffer materially adverse harm, including but not
11  limited to loss of career, lost wages, benefits, diminished employment
12  opportunities, humiliation and embarrassment. Lenk is entitled to all
13  remedies available for violations pursuant to *RCW 49.60.030(2).*

14

15  ## SEVENTH CLAIM FOR RELIEF
16  ### California Labor Code Retaliation
17  ### *Section 1102.5(b)*

18  91. Plaintiff incorporates all paragraphs as if fully set forth herein.

19  92. As pled herein, MPS retaliated (and continues to) against Plaintiff for
20  his protected activity of filing of Court complaints resisting discrimination,
21  and for filing of EEOC and SOX complaints.

22  93. Lenk pled his *"protected activity"* (Sept 3, 2021 SOX complaint and
23  others) and the resulting *"adverse employment action"* (blacklisting) and
24  denial of employment by MPS. Lenk also pled the casual linkage between the
25  events and that his *"protected activity"* was a contributing factor for MPS'
26  actions pursuant to *section 1102.6* (as determined in *Lawson*).

27  94. As a result of MPS' willful and intentional retaliation, Lenk has
28  suffered and continues to suffer materially adverse harm, including but not

1  limited to loss of career, lost wages, benefits, diminished employment
2  opportunities, humiliation and embarrassment. Lenk is entitled to all
3  remedies available for violations pursuant to *section 1102.5 (b)*.

4

5  ### EIGHTH CLAIM FOR RELIEF

6  ### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION

7  ### *42 U.S.C. Sections 2000e-3(a)*

8  95.  Plaintiff incorporates all paragraphs as if fully set forth herein.

9  96.  *Title VII* makes it an unlawful employment practice to discriminate
10  against an individual *"because he has opposed any practice made an unlawful*
11  *employment practice by this subchapter, or because he has made a charge,*
12  *testified, assisted, or participated in any manner in an investigation,*
13  *proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a)*. Lenk
14  was engaged in a protective opposition act at MPS and continues being
15  engaged in protected activity. MPS has and continues to retaliate against
16  Lenk for this participation.

17  97.  MPS conduct was willful since they were given significant notices by
18  Lenk of the retaliation but failed to stop, correct or investigate it in a timely
19  manner. MPS knew and showed reckless disregard that their oppressive
20  conduct was in violation of the *42 U.S.C. 2000e-3 § et seq.*

21  98.  Since Lenk's filing of *EEOC complaint 35A-2023-00023)*, MPS et al.
22  acting with malice, continued to interfere with Plaintiff's re-employment
23  efforts. MPS' *"blacklisting"* of Lenk due to protected activities is a form of
24  *Title VII* retaliation. Recovery under *Title VII* is just since *"Postemployment*
25  *blacklisting is sometimes more damaging than on-the-job discrimination"*.

26  99.  As a result of MPS' conduct, Lenk has suffered and continues to suffer
27  materially adverse harm, including but not limited to loss of career, lost
28  wages and benefits, diminished employment opportunities, humiliation,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; and pecuniary other non-pecuniary losses, because of his protected activity, in violation of *42 U.S.C. § 2000e-3 et seq* as alleged herein.

100. By reason of MPS' harassment and retaliation, Lenk is entitled to all remedies available for violations of the anti-retaliation provision of *Title VII*, including punitive damages and attorneys' fees per *U.S.C. § 2000e-5(k)*.

## NINTH CAUSE OF ACTION
### CIVIL RIGHTS ACT of 1866, CIVIL RIGHTS ACT of 1991 amended
### *42 U.S.C. § 1981 & 42 U.S.C. § 1981a -- Race*

101. Plaintiff incorporates all paragraphs as if fully set forth herein.

102. MPS violated Lenk's rights afforded by *The Civil Rights Act 1866, as amended by the Civil Rights Act of 1991 a.k.a. 42 U.S.C. §1981(a)* due to his race, including but not limited to their failure to hire him; career interference (blacklisting) at other companies; and for retaliation due to his opposition.

103. MPS acted with malice, and knew/showed reckless disregard that their oppressive conduct was and remains race motivated per their own admission in their ESG REPORT in violation of the *42 U.S.C. § 1981 & 1981(a)*.

104. MPS intentionally deprived Lenk of the performance, enjoyment, and all benefits and privileges of employment, violating *42 U.S.C. §1981 & 1981(a)*. As a result of MPS' conduct, Lenk has suffered and continues to suffer materially adverse harm, including but not limited to loss of career, lost wages and benefits, diminished employment opportunities, humiliation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; and pecuniary other non-pecuniary losses, because of his protected activity, in violation of *42 U.S.C. §1981 & 1981(a)* as alleged herein. Lenk is entitled to all remedies available for violations of *42 U.S.C. §1981 & 1981(a)*

1    including compensatory damages (back and front pay), emotional distress

2    and humiliation, attorneys' fees and punitive damages.

3

4                     **TENTH CAUSE OF ACTION**

5       **CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT --**

6                        **RETALIATION**

7                *Cal. Gov. Code § 12940 (a)(h)&(k)*

8    105. Plaintiff incorporates all paragraphs as if fully set forth herein.

9    106. Lenk pled his *protected activity* the *adverse employment actions*

10   (blacklisting, denying employment) and the *casual linkage* therein thus

11   fulfilling the requirement of *Cal. Gov. Code* 12940.

12    107. MPS retaliated against Lenk which affected his work performance,

13   income, reputation and ultimately, his career. MPS knew and showed

14   reckless disregard that their oppressive conduct was in violation of *Cal. Gov.*

15   *Code 12940.* MPS harmed Lenk by failing to comply to *12940 (a),(h) & (k):*

16    108. MPS was aware of Lenk's complaint / EEOC filings, has and continues

17   to retaliate against Lenk, which destroyed his career via blacklisting

18   (negative career references). MPS continued their adverse employment

19   actions against Lenk by their failure to hire. Plaintiff filed EEOC complaints

20   for MPS' retaliatory actions. Lenk filed a second charge with the DFEH

21   which is sufficient to support a claim for retaliation (since he previously

22   complained of discrimination).

23    109. As a result of MPS' conduct herein, their willful and intentional

24   discrimination harassment and retaliation, Lenk has and continues to suffer

25   materially adverse harm, including but not limited, to loss of career, lost

26   wages and benefits, diminished employment opportunities, humiliation,

27   emotional pain, suffering, inconvenience and loss of enjoyment of life.

28

110. MPS continues retaliating against Lenk in violation of *Cal. Gov. Code 12940(a), (h) & (k),* via career interferences, and by negative employment references. Lenk is entitled to recovery pursuant to *Cal. Gov. Code 12940.*

## ELEVENTH CLAIM FOR RELIEF
### CALIFORNIA UNFAIR COMPETITION LAW (UCL) VIOLATION
### *Business & Professional Code § 17200*

111. Plaintiff incorporates all paragraphs as if fully set forth herein.

112. California Courts determined that discrimination provides an unfair competitive advantage *"since older workers salaries are higher than younger workers"* pursuant to: *Cal. Bus & Prof Code § 17200: Herr v. Nestle U.S.A., Inc., 109 Cal. App. 4th 779, 789-90 (2003).*

113. Lenk pled MPS favors younger Asian, female workers over older male Caucasians to gain an unfair competitive salary advantage. MPS further favors even lower cost H1B visa workers to enhance their unfair competitive advantages. MPS, per https://www.h1bdata.org/employers, has hired 108 H1B employees in the 95119/95120 postal codes, **EXHIBIT L.**

114. MPS' 108 H1B employees represent over half of their San Jose employment: *"Monolithic's declarant Liliane Wei is a Senior Director of Human Resources. Ms. Wei declared that Monolithic has about 200 employees in its San Jose office as of 2021. Dkt. No. 1315" Bel Power Sols. v. Monolithic Power Sys., Civil 6:21-CV-655-ADA, 9 (W.D. Tex. May. 4, 2022)*

115. MPS' lower cost H1B hiring over qualified US employees harms the public; is unfair, unethical, oppressive, and unscrupulous and violates public policy (an "unfair" business practice *Cal. Bus & Prof Code § 17200.*

116. Lenk is *"a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" Cal. Bus & Prof Code § 17204.*

117. Lenk has standing per *Section 17204* and with *Section 382* of the Code of Civil Procedure. Lenk would be employed if not for MPS' unfair competition and violations of *Business & Professional Code § 17200.*

118. Lenk has an *"ownership interest"* he would obtained if not for MPS' *unlawful, unfair or fraudulent business act* and seeks restitutionary relief pursuant to: *Cortez v. Purolator Air Filter Prods., 23 Cal. 4th. 163 (2000)*

119. Lenk is entitled to relief pursuant to *Cal. Bus & Prof Code § 17203* to *"restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.'*

120. Neither Federal, California (bar the UCL), Washington or Arizona laws provides for legal remedies for MPS hiring of H1B employees over other suitable workers.

121. No individual law encompasses all the elements in this UCL claim (age, race, gender, pay). Plaintiff pleads there is an *"inadequacy-of-law"* for hidd proper restitution/recovery. *Shay v. Apple Inc., 2021 WL 1733385, at *3 (S.D. Cal. May 3, 2021)*. While some age and race discrimination laws may address portions of this claim, this would require those H1B workers to be age, race and gender diverse, an assumption that may not be valid. Additionally, those laws still fail to address the hiring of a lower cost H1B worker to gain an unfair competitive advantage (where compared to other companies that properly hire US workers with a similar skill set).

122. Assuming *arguendo* that discrimination laws could address this claim, such argument fails since the damages are limited by statute and do not permit for equitable restitution. One such limitation is the discrimination compensatory limits, as well as time limits on back pay.

123. Since such damages are inadequate, Lenk is entitled to seek equitable restitution under the UCL's unlawful prong. *See Anderson, 500 F. Supp. 3d at 1009-10.*

124. Only the restitution provided by the UCL laws will make Lenk whole for his financial loses caused by MPS' unfair competition. MPS hired H1B employees instead of Lenk (for positions which work he was highly qualified for). Since unfair hiring inhibited Lenk from employment, and caused him financial loss of amounts similar to his previous compensation (approximately $250K/yr not considering stock benefits) obtained when he worked at MPS (including loss of stock options and gains obtained therein).

125. Even if an equitable relief in law exists (which Plaintiff does not believe exists) he respectfully requests pleading the UCL as an equitable remedy in the alternative. *See Nacarinov. Chobani, LLC, 668 F. Supp. 3d 881, 895-97 (N.D. Cal. 2022) (denying dismissal of restitution claim, even if it "may be revisited at a later stage"); accord Yeomans v. World Fin. Grp. Ins. Agency, Inc., 2022 WL 844152 (N.D. Cal. Mar. 22, 2022).*

126. As a result of MPS' conduct alleged herein, of their willful and intentional unfair competitive practices, Lenk has suffered and continues to suffer materially adverse harm, including loss of career, lost wages / benefits, diminished employment opportunities, humiliation, emotional pain, suffering, mental anguish, and loss of enjoyment of life.

127. Lenk is entitled to costs and attorney's fees per *Cal. Civ. Code § 1021.5.*

## TWELFTH CLAIM FOR RELIEF

### Civil action for Retaliation -- SOX Whistle Blower

### *18 U.S.C. § 1514A*

128. Plaintiff incorporates all paragraphs as if fully set forth herein.

129. MPS is a publically traded company and hence required to provide Whistle Blower protection pursuant to *18 U.S.C. § 1514A (a)*. Lenk is a person who alleges discharge/discrimination in violation of said subsection *(a)* and seeks relief under *18 U.S.C. § 1514A(b)(1).*

1    130. Lenk applied to several MPS positions listed prior in this complaint,
2    which MPS failed to hire him due to his SOX reporting of questionable
3    activity, including, but not limited to concerns previously raised.

4    131. MPS continues their violate of *Sarbanes-Oxley* by deceiving investors
5    via questionable data in their investor presentations (to increase stock price).

6    132. MPS in their Aug 08, 2023 IR (Investor Relations) Deck, pg 8,
7    **EXHIBIT N**, represented their 2015 Automotive SAM as $4B, a significant
8    different than the $6B SAM (same 2015 Automotive SAM) MPS represented
9    in their MPS' 2018 Analyst Day Presentation, pg 85, **EXHIBIT O**. This
10   misrepresentation allows MPS to imply a higher growth rate falsely
11   misleading investors (MPS is not growing as fast as suggested by this data).

12   133. MPS' 2018 Automotive SAM is also misrepresented (different values --
13   $7B in their August 08, 2023 IR Deck versus $6B in their MPS' 2018 Analyst
14   Day Presentation) again allowing MPS to falsely represent faster growth.
15   Faster growth rates produce higher stock prices, *www.investopedia.com*.

16   134. MPS' false reporting of faster growth misleads stockholders (and stock
17   price), which MPS management yields financial gains from (a SOX violation).

18   135. MPS' false reporting (unfair competition noted in *Cal. Bus & Prof Code*
19   *§ 17200* claim) has been highly profitable for MPS management, who
20   obtained both additional stock options (per *"the plan"*) and higher stock price
21   gained by their illegal activities (unfair hiring practices and stealing
22   competitive information) as pled above (and prior).

23   136. Supplementing Lenk's prior assertions, other MPS employees note
24   their unfair competitive actions (pressured to disclose confidential and trade
25   secret information) per MONOLITHIC POWER SYSTEMS, INC., v. WEI
26   DONG: *"According to the defendants, **Mr. Hsing hired Ms. Sheng**, who was*
27   *a star engineer at Texas Instruments. **Then, he allegedly pressured her to***
28   ***disclose Texas Instrument's confidential and trade secret information***

*about Isocap and other semiconductor technology.* (As Monolithic's CEO, Mr. Hsing has *"unique first-hand, non-cumulative knowledge"* of Monolithic's development of synchronous rectifier technology and his plans for Monolithic's future development of products, including with Isocap technology.) Documents that Monolithic identifies as its confidential information and trade secrets *"originated from"* Texas Instruments, not Monolithic. *Ms. Sheng told Mr. Hsing that she was concerned about providing Texas Instruments' information, and he responded that she need not worry because "MPS is very good at such lawsuits." Mr. Hsing's "personal efforts to induce Ms. Sheng to disclose TI's [Texas Instruments'] trade secrets prompted Ms. Sheng to leave MPS after only seven months.""* MONOLITHIC POWER SYSTEMS, INC., v. WEI DONG, nacd-20-cv-06752-JSW (LB) (also 22-cv-01986-JSW (LB)) 01-20-2023.

137. While MPS reaps the rewards of illegal behavior, Plaintiff and other suffer (and continue to suffer) MPS' retaliation for questioning their illegal activity (another SOX violation and unfair trade practice).

138. Lenk filed a timely SOX retaliation complaint, **EXHIBIT I**, on Sept 03, 2021 to the U.S. Department of Labor, OSHA (Phoenix Office). The Secretary of Labor did not issue a decision within 180 days. Lenk is permitted to bring an action pursuant to *18 U.S.C. § 1514A (b)(B)*. The SOX complaint addressed retaliation for Lenk's reporting of MPS' illegal/unethical events and their misleading/fraudulent information provided to investors (violations of the SEC), with yet another example pled above.

139. Based on causal timing, Lenk's qualifications, MPS' removal of job postings and other items as pled, Plaintiff's protected activity was a contributing factor in MPS refusal to hire. Lenk is entitled to all remedies via *18 U.S. Code § 1514A (c)(2): Relief for any action under paragraph (1) shall include— (A)reinstatement with the same seniority status that the employee*

1  *would have had, but for the discrimination; (B)the amount of back pay, with*
2  *interest; and (C)compensation for any special damages sustained as a result of*
3  *the discrimination, including litigation costs, expert witness fees, and*
4  *reasonable attorney fees.*

5  140. The company's Directors should also be held liable under SOX
6  pursuant to *Section 1513 of title 18, U.S.C. (e): "Whoever knowingly, with the*
7  *intent to retaliate, takes any action harmful to any person, including*
8  *interference with the lawful employment or livelihood of any person, for*
9  *providing to a law enforcement officer any truthful information relating to the*
10  *commission or possible commission of any Federal offense, shall be fined*
11  *under this title or imprisoned not more than 10 years, or both."*

13  ### THIRTEENTH CAUSE OF ACTION
14  ### BLACKLISTING – CALIFORNIA
15  ### *Violation of Cal. Lab. Code 1050 & 1052*

16  141. Plaintiff incorporates all paragraphs as if fully set forth herein.

17  142. Plaintiff asserts MPS provided false information (mispresentation) to
18  numerous companies Lenk applied to, inhibiting him from obtaining
19  employment, a violation of *Cal. Lab. Code, § 1050.* MPS failed to take *"all*
20  *reasonable steps"* to prevent its employees from similar misrepresentations, a
21  violation of *Cal. Lab. Code, § 1052.*

22  143. While an employer is just seeking confirmation of a candidate's
23  employment (which dates and roles are validated), the circumstances above
24  suggest more information was shared than that permitted by law.

25  144. Sharing employment dates and roles would not produce the drastic
26  change in employment circumstances noted. Nor would MPS sharing of
27  Lenk's positive financial results produced when he was employed there. The

28

1    only plausible solution is MPS (and/or its employees) share false information
2    in a malicious manner to interfere with Lenk's employment opportunities.

3    145. MPS provided such false information to inhibit Lenk from further
4    employment for several reasons: 1) as part of their continued retaliation for
5    his actions taken against MPS including, but not limited to the filing of
6    EEOC and Court complaints, 2) as a punitive action to harm Lenk for the
7    expenses incurred (MPS stating that the expended over a million dollars on
8    this dispute and 3) as part of their continued unfair competitive practice in
9    which their interference with Lenk's career inhibits Lenk from competing
10   against the company in the automotive semiconductor field. Lenk has been
11   successful in the automotive semiconductor field in prior roles.
12   Reemployment in the automotive semiconductor industry would harm MPS
13   automotive sales, especially with Lenk's knowledge of MPS products (and
14   weaknesses). MPS' Automotive revenue reduction impacts MPS' stock
15   growth, and reduces the income from those that benefit from such growth.

16   146. In addition to above, Bob Lucas (who Lenk worked with at MPS) had
17   personal vindictive reasons to settle the score with Lenk. Earlier in this
18   dispute, Lenk noted concerns about sharing prior company's confidential
19   information in regard to legal action *19-2240-Volterra Semiconductor LLC, v.*
20   *Monolithic Power Systems, INC.* Lenk claimed he noted Bob Lucas' prior
21   company's (Volterra) information on Bob's personal computer when Lenk
22   walked by his office (this stood out as an unusual event since Lenk was
23   typically the only Marketing Manager in the Office at 8 am).

24   147. MPS (and/or their officers) violated Lenk employment for their own
25   personal financial stock gain obtained by their blacklisting efforts.

26   148. Due to MPS conduct alleged, their willful, malicious and intentional
27   blacklisting, Lenk suffered and continues to suffer materially adverse harm,
28   including loss of career, lost wages and benefits, diminished employment

SAC FOR DAMAGES                28

opportunities, humiliation, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Lenk is entitled to civil recovery, including treble damages, pursuant to *Cal. Lab. Code, § 1054*.

## FOURTEENTH CAUSE OF ACTION

### BLACKLISTING – WASHINGTON

*Violation of RCW 49.44.010*

149. Plaintiff incorporates all paragraphs as if fully set forth herein.

150. MPS' made willful and malicious statements that *"influence or prejudice the mind of any employer against the person of such person seeking employment"*, a violation of *RCW 49.44.010*.

151. As with *Cal Lab Code§1054, RCW 49.44.010* permits civil action: *Moore v. Commercial Aircraft Interiors, LLC, 168 Wn. App. 502, 515, 278 P.3d 197 (2012) citing Dick v. N. Pac. Ry. Co., 86 Wash. 211, 221, 150 P. 8 (1915) "Dick remains good law, and it allows a civil cause of action for blacklisting."*

152. As a result of MPS' conduct alleged herein, their willful and intentional blacklisting, Lenk has suffered and continues to suffer materially adverse harm, including loss of career, lost wages and benefits, diminished employment opportunities, humiliation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; and other losses.

153. MPS' actions have and continue to harm Lenk and his career. Lenk is entitled to the full legal recovery as permitted by *RCW 49.44.010*.

## FIFTEENTH CAUSE OF ACTION

### BLACKLISTING -- ARIZONA

*Violation of A.R.S. § §23-1361*

154. Plaintiff incorporates all paragraphs as if fully set forth herein.

155. MPS knew and showed reckless disregard that the communication by their employees *"prevented or prohibited* (Lenk) *from engaging in a useful occupation"* which is a violation of the *A.R.S. § §23-1361.*

156. As a result of MPS willful and intentional violation(s), Lenk has suffered and continues to suffer materially adverse harm, including but not limited to loss of career, lost wages and benefits, diminished employment opportunities, humiliation, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

157. MPS' actions have and continue to harm Lenk's career. Lenk requests the full legal recovery as allowed by *A.R.S. § §23-136(I) "A court shall award court costs, attorney fees and other related expenses to any party that prevails in any civil proceeding in which a violation of this section is alleged."*

## PRAYER FOR RELIEF

158. WHEREFORE, Plaintiff respectfully prays for:

159. Trial by jury for this complaint, pursuant to *FRCP 38.*

160. Compensation for all injury/damages suffered (including unfair competition), including both economic and non-economic damages, in an amount proven at trial -- back pay, front pay, pre/post judgment interest, lost benefits of employment, adverse tax consequences, investment loss, liquidated damages under Federal, California, Washington and Arizona law for willful violations, exemplary damages, and general damages relating to emotional distress and mental anguish damages as provided by law.

161. Plaintiff's reasonable attorneys' fees, expert fees, and costs, as provided by law, as well as the private attorney general theory of recovery of reasonable attorneys' fees and costs in employment related cases.

162. Exemplary and/or punitive damages per *California Civil Code § 3294*;

163. Treble damages pursuant to *Cal. Lab. Code 1054;*

164. Order MPS to eradicate the effects of their unlawful practices;

165. Grant all other relief as the Court may deem just and proper.


Respectfully submitted,


DATED this 20th day of August, 2025          /s/ Kenneth Lenk
                                             Kenneth Lenk, pro se
                                             3310 South Buckskin Way
                                             Chandler, AZ 85286
                                             (215) 668-8136
                                             ken_lenk@yahoo.com

SAC FOR DAMAGES                    31