**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Kenneth Lenk,

Plaintiff,

v.

Monolithic Power Systems Incorporated,

Defendant.

No. CV-23-02083-PHX-SHD

**ORDER**

Pending before me are (1) Defendant Monolithic Power Systems, Inc.'s ("Monolithic") Motion to Dismiss Counts 6, 7, 8, 9, 11, 12, 13, 14, and 15 of Plaintiff Kenneth Lenk's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 66), and (2) Lenk's Motion for Reconsideration of my August 6, 2025 Order, (Doc. 70). For the following reasons, Monolithic's motion to dismiss will be **granted** and Lenk's motion for reconsideration will be **denied**.

## I. BACKGROUND

This case "is merely the latest entry in a long-running litigation saga that commenced in 2015."[1] (Doc. 25 at 1.) Lenk was employed by Monolithic for approximately one year in 2012–2013. (*Id.*) Since 2015, he has filed five lawsuits against Monolithic. (*Id.*) The first four—*Lenk I* through *Lenk IV*—were litigated in the Northern

[1] The parties are familiar with the factual background of this case, (*see* Doc. 55 at 1–5; Doc. 25 at 1–5), so I include only the context relevant to the pending motions.

District of California and were ultimately dismissed, largely under the doctrines of claim and issue preclusion. (*Id.* at 2–4.) The Northern District of California and the Ninth Circuit awarded Monolithic more than $55,000 in attorney fee sanctions against Lenk, and the Northern District declared him a vexatious litigant. *See Lenk v. Monolithic Power Sys., Inc.*, 2024 WL 4529356, at 1 (N.D. Cal. Oct. 18, 2024).

Lenk filed the present action in October 2023.[2] (Doc. 1.) On September 19, 2024, Judge Tuchi granted Monolithic's first motion to dismiss with leave to amend. (Doc. 25.) Judge Tuchi instructed Lenk that his amended pleading (1) could not "allege any facts or claims predicated thereon already rejected in *Lenk I–IV*" and (2) "must comply with Rule 8(a)." (*Id.* at 12.) Judge Tuchi observed that the original Complaint was "90 pages (plus 359 pages of attachments)," which was "excessive for a complaint in a case as straightforward as this," and warned Lenk that further failure to comply could result in sanctions, an award of attorney fees, or a formal vexatious litigant designation. (*Id.* at 11–12.)

Lenk filed the First Amended Complaint ("FAC") on October 3, 2024. (Doc. 26.) The FAC asserted the same fifteen causes of action pled in Lenk's original complaint, including claims for age and race discrimination under federal and state law, retaliation, Sarbanes-Oxley ("SOX") whistleblower retaliation, unfair competition under California's Unfair Competition Law ("UCL"), and blacklisting under California, Washington, and Arizona state statutes. (*Id.*) Monolithic moved to dismiss, (Doc. 31), and on August 6, 2025, I granted the motion in part and denied it in part. (Doc. 55.)

I dismissed with leave to amend the following: Lenk's UCL claim (Count 11) and all three blacklisting claims (Counts 13-15). (*Id.* at 35.) I dismissed without leave to amend the following: Lenk's California Fair Employment and Housing Act ("FEHA") claims (Counts 3 and 10), his Arizona Civil Rights Act ("ACRA") claim (Count 4), and his Washington Law Against Discrimination ("WLAD") claims (Count 5). (*Id.*) I dismissed

---

[2] Previously, Judge Tuchi presided over this action. On February 10, 2025, the case was transferred to me. (Doc. 45.)

without leave to amend the following portions of certain claims: Lenk's retaliation to the extent premised on the filing of an EEOC complaint (Counts 6-8), his 42 U.S.C. § 1981 to the extent premised on Monolithic's failure to rehire (Count 9), and his SOX claim to the extent premised on conduct during his employment as either precluded or time-barred (Count 12). (*Id*. at 36.) Eleven claims were not conclusively dismissed in my prior order: age discrimination under the ADEA (Counts 1 and 2); retaliation to the extent premised on Lenk's prior lawsuits or SOX complaint (Counts 6, 7, 8, 9, 12); age and race discrimination under UCL (Count 11); and blacklisting (Counts 13-15). (*Id*. at 35-36.)

Lenk filed the operative Second Amended Complaint ("SAC") on September 10, 2025. (Doc. 65.)[3] The SAC asserts the same fifteen causes of action pled in the FAC. (*Id.*) The change between the FAC and SAC is primarily Lenk's addition of allegations concerning his blacklisting claims. The crux of Lenk's changes is that he is "highly qualified for employment" and that Monolithic "directly interfered" with Lenk's future job prospects. (*Id.* ¶¶ 213, 225.) Lenk also argues that Monolithic's failure to rehire him constitutes blacklisting. (*Id*. ¶¶ 233-235.) On September 24, 2025, Monolithic moved to dismiss Counts 6, 7, 8, 9, 11, 12, 13, 14, and 15. (Doc. 66.) Lenk responded, (Doc. 67), and Monolithic replied, (Doc. 68). On July 6, 2026, Lenk filed a second motion for reconsideration of the August 6, 2025 Order. (Doc. 70.)[4]

## II. PRELIMINARY MATTERS

Before turning to the merits, I first address two preliminary issues raised in Lenk's opposition. First, Lenk contends Monolithic failed to comply with Local Rule 12.1(c)'s requirement to meet and confer prior to filing the motion to dismiss. (Doc. 67 at ¶¶ 7–8.) The record refutes that assertion. Monolithic's motion includes the required certification of compliance in its caption, (Doc. 66 at 1), and details the parties' meet-and-confer

---

[3] Lenk filed a Second Amended Complaint on August 21, 2025 (Doc. 62). Per the Court's Order dated August 27, 2026, Lenk filed a corrected Second Amended Complaint on September 10, 2025 (Doc 65). The latter Second Amended Complaint is operative here.

[4] I find these motions suitable for decision without oral argument. *See* LRCiv 7.2(f).

communications, (*id.* at 3). Lenk's own Exhibit A confirms that Monolithic offered a live conference, that Lenk declined and requested written notice, that Monolithic provided a detailed written summary of the three issues it intended to raise in its motion, and that Lenk responded that "the items you note are already addressed in the complaint." (Doc. 67, Ex. A.) Monolithic's attempts to meet and confer satisfy the rule, which permits compliance "through personal, telephonic, or written notice of the issues that [the movant] intends to assert in a motion." LRCiv 12.1(c).

Second, Lenk objects that Monolithic mailed a copy of the motion to dismiss to his wife along with a letter. (Doc. 67 at ¶ 8.) Regardless of the merits of that dispute, it has no bearing on the sufficiency of the SAC or the merit of the motion.

## III. MOTION TO DISMISS

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and [ ] a recovery is very remote and unlikely." *Id.* at 556 (citation modified).

Courts liberally construe the pleadings of pro se plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Pro se complaints "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quotation

marks omitted). "A liberal construction of a pro se complaint, however, does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

**B. Discussion**

**1. Count 11: California Unfair Competition Law**

I previously dismissed Lenk's UCL claim because he failed to allege that he otherwise lacks an adequate legal remedy, but granted him leave to amend. (Doc. 55 at 26.) He has failed to cure that deficiency in the SAC, and that failure is dispositive.

To pursue equitable UCL relief in federal court, Lenk must plead that he "lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see id.* ("[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." (citation modified).) As explained in my prior order, Lenk seeks restitution for Monolithic's failure to rehire him and for blacklisting, which he alleges are tied to Monolithic's UCL violations. (Doc. 55 at 26.) Lenk has adequate remedies at law for the alleged underlying harms, as is evident from the other claims he brings against Monolithic in his SAC, namely blacklisting, race discrimination and retaliation. (Doc. 65 at ¶¶ 211-246, 88-103, 104-118.)

Lenk argues that he lacks an adequate legal remedy because certain of his legal theories have been dismissed, he lacks standing to bring a Consumer Legal Remedies Act ("CLRA") claim, and state blacklisting statutes do not reach "internal verbal communications." (Doc. 67 at ¶¶ 20, 31, 37–38.) But a plaintiff's inability to prove entitlement to a legal remedy "does not make that remedy inadequate." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025). Lenk's "internal blacklisting" theory is, in substance, a repackaging of his retaliation and discrimination claims—theories for which legal remedies would be available if adequately pleaded. That the underlying legal claims fail on the merits does not render the legal remedy inadequate for purposes of *Sonner*. *See Key*, 129 F.4th at 1142.

Lenk attempts to distinguish *Sonner* on the ground that the plaintiff there voluntarily dismissed her CLRA claim, (Doc. 67 at ¶ 30), but the Ninth Circuit has expressly rejected that distinction: "Nothing in *Sonner's* reasoning suggested that its holding was limited to cases in which a party had voluntarily dismissed a damages claim." G*uzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022). Because Lenk cannot plead inadequate legal remedies, his UCL claim fails at the threshold, and I need not reach Monolithic's additional grounds for dismissal. Count 11 will be dismissed with prejudice.

**2. Counts 13–15: Blacklisting**

I previously identified the defect in Lenk's blacklisting claims: "The FAC does not allege any actions taken by Monolithic, any statements made by Monolithic to Lenk's prospective employers, any interactions between Monolithic and his prospective employers, or any *facts* to support his conclusions." (Doc. 55 at 27.) Judge Tuchi identified the same defect in dismissing Lenk's original complaint. (Doc. 25 at 10–11.) Lenk has not cured this defect.

Although Lenk now alleges that Maurice Sciammas, Monolithic's Senior Vice President of Sales and Marketing, made unspecified "comments," (Doc. 65 at ¶ 60), and that Bob Lucas, Monolithic's Director or Marketing, made unspecified "blacklisting comments," (*id.* ¶ 63), Lenk still fails to identify the substance of any statement, to whom it was made, when, or why it was false or unlawful. Lenk's speculation that only blacklisting can explain his difficulty obtaining employment, (Doc. 67 at ¶ 54), is the very "bare speculation" that has been twice rejected. (Doc. 25 at 11; Doc. 55 at 27). His argument that Monolithic's expectations of specificity are "unrealistic" at the pleading stage, (Doc. 67 at ¶ 48), misapprehends *Iqbal* and my prior rulings. *See Iqbal*, 556 U.S. at 678 (holding that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). These pleading deficiencies are fatal under California Labor Code Section 1050, Revised Code of Washington Section 49.44.010, and Arizona Revised Statutes § 23-1362(A).

California Labor Code Section 1050 requires an actionable "misrepresentation."

*Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1152 (9th Cir. 1988). Section 1050 claims "sound in fraud" and are subject to Rule 9(b)'s heightened pleading standard. *Freeman v. Wells Fargo & Co.*, 2023 WL 4828678, at *11 (N.D. Cal. 2023) (quoting Fed. R. Civ. P. 9(b)). Lenk identifies no specific misrepresentation.

Revised Code of Washington Section 49.44.010 requires a "willful[] and malicious[]" statement. *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wash. App. 502, 515 (2012). Conclusory allegations of negative comments are insufficient. *See Neely v. Boeing Co.*, 2018 WL 2216093, at *6 (W.D. Wash. May 15, 2018); *Cooper v. Univ. of Washington*, 2007 WL 3356809, at *8 (W.D. Wash. Nov. 8, 2007). Lenk's complaint contains only conclusory allegations of negative comments, and his attempts to distinguish *Neely* and *Cooper* are unavailing; those courts required the same specificity demanded here.

Arizona Revised Statutes § 23-1362(A) requires an "understanding or agreement" between two or more employers. Lenk pleads no such agreement. Nor does Lenk allege any "specific statements" by Monolithic. *Riley v. City of Prescott*, 2012 WL 512671, at *9 (D. Ariz. Feb. 16, 2012). This lack of specific statements is particularly important because Arizona law expressly immunizes an employer that "in good faith provides information requested by a prospective employer . . . the job performance, professional conduct or evaluation of a current or former employee." Ariz. Rev. Stat. § 23-1362(C).

Counts 13, 14, and 15 will be dismissed with prejudice. This is Lenk's third attempt to plead these claims, and I have provided specific and repeated guidance concerning the defects in Lenk's pleadings. Further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

**3. Counts 6, 7, 8, 9, and 12: Retaliation**

I previously dismissed a portion of each of Lenk's retaliation claims (Counts 6, 7, 8, 9, and 12). (Doc. 55. at 36.) For the following reasons, I now dismiss these claims in their entirety. As a preliminary matter, in the SAC, Lenk includes allegations reasserting retaliation theories I have already dismissed with prejudice, including retaliation predicated

on Lenk's filing of an EEOC complaint. (*See*, *e.g.*, Doc. 60 at ¶¶ 93, 98; Doc. 55 at 36.) I will not revisit those rulings. To the extent Counts 6, 7, 8, and 9 allege retaliation based on Lenk's EEOC complaint, that theory remains dismissed without leave to amend for the reasons stated in my prior Order. (Doc. 55.)

As with his FAC, Lenk asserts claims for unlawful retaliation under WLAD, California Labor Code, FEHA, and Title VII. These retaliation claims are considered together because the anti-retaliation provisions are analyzed under the same framework. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (applying the *McDonnell Douglas* framework to retaliation claims brought under both Title VII and WLAD); *Wong v. Wells Fargo Bank*, N.A., 2021 WL 4243398, at *9 (N.D. Cal. 2021) (same for a retaliation claim brought under the California Labor Code); *Schechner v. KPIX-TV & CBS Broad., Inc.*, 686 F.3d 1018 (2012) (same for a retaliation claim brought under FEHA). Lenk premises these claims on two theories: (1) that he was fired and not rehired in retaliation for filing a SOX complaint, and (2) that he was fired and not rehired in retaliation for filing lawsuits against Monolithic. (Doc. 65 at ¶¶ 104–122, 198–210.)

Monolithic argues that Lenk's retaliation theories fail because he has failed to allege a causal link between his SOX complaint or lawsuits, on the one hand, and his firing or lack of rehiring, on the other. To state a retaliation claim under any of the statutes Lenk invokes, Lenk must plausibly allege a causal connection between protected activity and an adverse employment action. *Stegall,* 350 F.3d at 1065; *Wong* WL 4243398 at 9. "Essential to a causal link" are allegations "that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). All five of Lenk's unlawful retaliation claims fail because Lenk has not alleged a causal connection between a protected activity and an adverse employment action.

a. <u>SOX-Based Theory</u>

The SAC does not allege that Monolithic knew of Lenk's September 3, 2021 SOX complaint. Lenk attempts to cure this deficiency in his opposition by introducing two new allegations: (1) a March 2021 email to Monolithic's former outside counsel Jeff Snyder

stating Lenk's intent to file a SOX complaint, and (2) an August 25, 2022 email to the Arizona Attorney General's office in which he provided "notice of his SOX complaint." (Doc. 67 at ¶¶ 59–62.)

As a threshold matter, a plaintiff's attempt "to supplement the complaint in [his] briefing . . . is fruitless." *See Fishell v. Mortg. Elec. Registration Sys.*, 2011 WL 13233434, at *1 (D. Ariz. Nov. 15, 2011) (citation modified). In any event, Lenk's new assertions would not save his retaliation claims even if they had been alleged in the SAC.

First, announcing an intent to file a SOX complaint to a defendant's former outside counsel is not a statutorily protected activity under 18 U.S.C. § 1514A(a)(2), which protects employees who "file, cause to be filed, testify, participate in, or otherwise assist in a proceeding." 18 U.S.C. § 1514A(a)(2). Put another way, absent actual knowledge by Monolothic that Lenk actually filed the SOX complaint, a claim for retaliation fails.

Likewise, Lenk's statement that he provided notice of his SOX complaint to the Arizona Civil Rights Division (the "Division") via email in August 2022 fails to save his retaliation claims. Lenk argues that "MPS would have received a copy of this file," (Doc. 67 at ¶62), but does not allege Monolithic ever saw or received either his email or the SOX Complaint. He seems to imply that the Arizona Attorney General ("AG") sent Monolithic the August 2022 email concerning the SOX complaint when notifying Monolithic that Lenk had filed a charge of discrimination against it. *See id*. But it is not at all apparent why that would be the case. Arizona Revised Statues Section 41-1481(B) requires the AG to serve only "the charge," not the Division's entire correspondence file with the claimant. A.R.S. § 41-1481(B). Further, the Notice of Right to Sue attached to the FAC shows that Lenk did not file his Arizona charge of discrimination until October 2022. (Doc. 26 at 53.) Lenk does not explain why the AG would have sent Monolithic correspondence it received from Lenk about his unrelated SOX complaint months before he filed his charge of discrimination. The implication is nonsensical and far too tenuous to constitute an allegation that Monolithic received notice of the SOX complaint.

b. <u>Litigation-Based Theory</u>

In the SAC, Lenk argues that Monolithic retaliated against him for participating in a "statutorily protected activity," "filing of Court complaints," and filing of an EEOC complaint. (Doc. 65 at ¶¶ 107, 110, 116, 120.)[5] Lenk attempts to allege a causal link exists between these filings and the alleged adverse actions. (*Id.* ¶¶ 107, 110-111, 116.)

Monolithic argues that the SAC "fails to allege any facts suggesting that the individuals (or software programs) that would have reviewed [Lenk's] job applications or given references to prospective employers knew about the litigation." (Doc. 66 at 15.) Lenk does not respond to this argument, and the Court deems the point conceded. *Sema Logistics Inc. v. Alt. Heavy Towing Inc.*, 2025 WL 460525, at *1 (D. Ariz. Feb. 11, 2025); *Scott v. City of Phoenix*, 2011 WL 3159166, at *10 (D. Ariz. July 26, 2011)).

To the extent Lenk relies on temporal proximity to establish causation, (*See* Doc. 60 at ¶ 210), the argument fails. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). Lenk's earlier lawsuits were dismissed in 2015, 2017, and February 2020, at least a year—and up to nine years—before the alleged retaliatory conduct in 2021–2024. That gap is too great to raise an inference of causation. *Id.*

Accordingly, Counts 6, 7, 8, 9, and 12 are dismissed with prejudice. Lenk has had multiple opportunities to plead retaliation claims and has failed to allege the required causal link. Further amendment would be futile. *See Foman*, 371 U.S. at 182.

## IV. MOTION FOR RECONSIDERATION

Lenk moves for reconsideration of my August 6, 2025 Order, seeking reinstatement of his FEHA claim and revival of theories underlying his race discrimination and UCL claims. (Doc. 70)

---

[5] In the SAC, Lenk does not assert any litigation-based claims under his SOX claim (Count 12) so that claim is not addressed here. (Doc. 65 at 44-45.)

I have discretion to determine whether to grant a motion for reconsideration. *See Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). Ordinarily, a motion for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g); *see also School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (reconsideration appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law).

A motion for reconsideration must also be filed "no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." LRCiv 7.2(g)(2). Lenk's motion, filed nearly eleven months after the August 6, 2025 Order, is untimely and fails on this basis.

It also fails on the merits. Lenk first argues that he has now cured the FEHA exhaustion defect by filing a charge with the California Civil Rights Department in September 2025 and receiving a 150-day notice in June 2026. (Doc. 70 at ¶¶ 1–3.) These are not "new facts" within the meaning of Local Rule 7.2(g); the rule contemplates facts that existed at the time of the order but could not have been discovered with reasonable diligence. *See CSAA Affinity Ins. Co. v. AmeriGas Propane LP*, 2022 WL 393214, at *4 (D. Ariz. Feb. 9, 2022) (holding that a declaration generated after dismissal did not constitute "new facts" under Local Rule 7.2(g)(1)). In any event, Lenk concedes he has not yet obtained a right-to-sue letter, (Doc. 70 at ¶¶ 1–3.), which FEHA exhaustion requires, *Rodriguez v. Airborne Express*, 265 F.3d 890, 896–97 (9th Cir. 2001).

Lenk next points to an April 2026 lawsuit filed by the Department of Justice against Cloudera, Inc. under 8 U.S.C. § 1324b as "new legal authority" supporting his race discrimination and UCL claims. (Doc. 70 at ¶¶ 4–8.) The filing of a complaint by the Department of Justice is not legal authority. It is an unadjudicated allegation in a different case involving a different defendant and a different statutory framework, and it does not alter the elements of any claim Lenk has pleaded.

Lenk has not identified manifest error, newly discovered evidence, or an intervening change in controlling law. His motion is denied.

**V. LEAVE TO AMEND**

If a pleading could be cured by the allegation of other facts, a pro se litigant is typically entitled to an opportunity to amend a complaint before dismissal of the action. *Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc), *overruled by Singleton v. Gates*, 2026 U.S. App. LEXIS 15528 (2026). A finding of futility itself may justify not granting leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), *superseded by statute,* Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1226, *as recognized in Atam v. Kaiser Found. Health Plan Inc.*, 2026 WL 1455003, at *4 (C.D. Cal. May 19, 2026). Courts may also consider "bad faith, undue delay, prejudice to the opposing party . . . and whether the party has previously amended his pleadings." *Id.* Finally, a court may deny leave to amend if the "movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Id.*

Lenk has had three opportunities to plead his blacklisting claims, three opportunities to plead his retaliation claims, and two opportunities to plead his UCL claim. I have provided specific guidance on the deficiencies in each. Rather than curing those deficiencies, the SAC repeats them, reasserts theories that have been dismissed with prejudice, and injects prolix legal argument in place of factual allegations. Further amendment would be futile and would unduly prejudice Monolithic, who has expended significant resources defending against multiple iterations of the same claims. Dismissal with prejudice is warranted.

**VI. CONCLUSION**

For the reasons stated above, Lenk has failed to state a claim on each of the counts challenged by Monolithic. Lenk's motion for reconsideration is also untimely and fails on the merits.

Accordingly,

**IT IS ORDERED** granting Monolithic's Motion to Dismiss, (Doc. 66). Counts 6, 7, 8, 9, 11, 12, 13, 14, and 15 of Lenk's Second Amended Complaint, (Doc. 65), are dismissed with prejudice.

**IT IS FURTHER ORDERED** denying Lenk's Motion for Reconsideration, (Doc. 70).

**IT IS FURTHER ORDERED** that Monolithic shall answer the remaining claims, Counts 1 and 2, no later than **September 7, 2026**.

Dated this 24th day of August, 2026.

Honorable Sharad H. Desai
United States District Judge